IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN HOGG
on behalf of himself and all others similarly situated,

                Plaintiff,

        v.

DILLON LOGISTICS, INC.; and
COTTON CREEK CAPITAL PARTNERS II, L.P.
                Defendants.

Case No.: 1:21-cv-01299-MN

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

    Brian Hogg ("Plaintiff") on behalf of himself and a class of those similarly situated ("Other Similarly Situated Employees"), by way of First Amended Complaint against Dillon Logistics, Inc. and Cotton Creek Capital Partners II, L.P. ("Defendants") by and through his counsel allege as follows:

**NATURE OF THE ACTION**

    1.    This is a class action for the recovery by Plaintiff and Other Similarly Situated Employees of the Defendants, as a single employer, of damages in the amount of 60 days' pay and ERISA benefits by reason of Defendants' violation of the Plaintiff's rights under the Worker Adjustment and Retraining Notification Act of 1988 29 U.S.C. §§ 2101-2109 *et. seq.* (the "WARN Act"). Although the Plaintiff and the Other Similarly Situated Employees were nominally employed by Defendant, Dillon Logistics, Inc.("Dillon"), pursuant to the WARN Act's single employer rule, Cotton Creek Capital Partners II, L.P. ("Cotton Creek") was also the Plaintiff's and the Other Similarly Situated Employees "Employer" until they were terminated as part of, or as a result of a mass layoff and/or plant closing ordered by Defendants on or about August 31, 2021. The Defendants violated the WARN Act by failing to give the Plaintiff and the Other Similarly Situated Employees of the Defendants at least 60 days' advance written notice of

termination, as required by the WARN Act. As a consequence, the Plaintiff and the Other Similarly Situated Employees of the Defendants are entitled under the WARN Act to recover from the Defendants their wages and ERISA benefits for 60 days, none of which has been paid.

2. Plaintiff also brings this action against Defendants on behalf of himself and the other similarly situated former employees seeking pay for accrued but unused vacation time.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

4. Venue in this Court is proper pursuant to 29 U.S.C § 2104 (a)(5).

## THE PARTIES

5. Upon information and belief, at all relevant times, Defendant Dillon, is a Delaware corporation and therefore resides in Delaware under 28 U.S.C. § 1391(b)(1).

6. Upon information and belief, at all relevant times, Defendant Dillon maintained a Facility located at 400 Dillon Drive, Ellabell, GA 31308 (the "Savannah Facility").

7. Upon information and belief, at all relevant times, Defendant Dillon also maintained facilities located at 1833 Westgate Parkway SW, Atlanta, GA 30336; 4300 N. I-35E Waxahachie, TX 75165; 3368 County Road 8 Heidelberg, MS 39439; 4820 Joliet Avenue McCook, IL 60525; 403 Bank Street, Lodi, OH 44254; 251 N Roeske Avenue, Suite A Michigan City, IN 46360; 3995 State Road 60 E Mulberry, FL 33860; 4614 S. 50th Street Tampa, FL 33619 as well as other facilities (collectively "the Facilities").

8. Upon information and belief, Defendant Cotton Creek is a Delaware corporation and therefore resides in Delaware under 28 U.S.C. § 1391(b)(1).

9. Upon information and belief, in January 2017, Cotton Creek acquired a majority interest in Dillon.

10. Upon information and belief, at all relevant times, Defendants each jointly maintained, owned and operated the Facilities.

11. Plaintiff Brian Hogg was employed by Defendants, as a single employer, at the Savannah Facility until his layoff without cause on or about August 31, 2021.

12. Plaintiff and the Other Similarly Situated Employees were employed by Defendants as a single employer at the Facilities until their termination without cause on or about August 31, 2021 and thereafter at which time Defendants ordered a mass layoff and/or plant closing of the Facilities.

13. Upon information and belief, approximately 350 persons were employed at the Facilities by Defendants until their termination without cause on or about August 31, 2021.

14. Upon information and belief, Defendants, as a single employer, owned and operated the Facilities until on or about August 31, 2021.

15. On or about August 31, 2021 and thereafter, Defendants, as a single employer, ordered the termination of the Plaintiff's employment together with the termination of all other employees who worked at or reported to the Facilities as part of a mass layoff and/or plant closing as defined by the WARN Act for which they were entitled to receive 60 days advance written notice under the WARN Act.

## CLASS ACTION ALLEGATIONS – 29 U.S.C. § 2104 (a)(5)

16. Pursuant to the WARN Act, 29 U.S.C. § 2104 (a)(5), the Plaintiff maintains this action on behalf of himself and on behalf of each of the Other Similarly Situated Employees.

17. Each of the Other Similarly Situated Employees is similarly situated to the Plaintiff in respect to his or her rights under the WARN Act.

18. Defendants, as a single employer, were required by the WARN Act to give the Plaintiff and the Other Similarly Situated Employees at least 60 days advance written notice prior to their terminations.

19. Prior to their terminations, neither the Plaintiff nor the Other Similarly Situated Employees received written notice that complied with the requirements of the WARN Act.

20. Defendants failed to pay the Plaintiff and the Other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) days following their respective terminations and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

## **CLASS ACTION ALLEGATIONS RULES 23 (a) and (b)**

21. The Plaintiff brings this action on his own behalf and, pursuant to the Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the Other Similarly Situated Employees who worked at the Facilities and were terminated as part of or as the reasonably foreseeable result of the mass layoff and/or plant closing ordered by the Defendants, as a single employer, on or about August 31, 2021 ("the "Class").

22. The persons in the Class identified above ("Class Members") are so numerous that joinder of all Class Members is impracticable.

23. There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

24. The claims of the representative party are typical of the claims of the Class.

25. The representative party will fairly and adequately protect the interests of the class.

26. The Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the contest of WARN Act litigation, where individual Plaintiffs and Class Members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

28. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

    (a) Whether the Class Members were employees of the Defendants who worked at or reported to the Facilities;

    (b) Whether Defendants, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice;

    (c) Whether the Defendants may rely on the WARN Acts "unforeseeable business circumstances" defense.

    (d) Whether Defendants failure to provide 60 days' notice should render them liable to the Class Members for 60 days' pay and benefits.

    (e) Whether the Defendants constituted a "single employer" as defined by the WARN Act.

### CAUSE OF ACTION & CLAIM FOR RELIEF: VIOLATION OF THE WARN ACT, 29 U.S.C. §§ 2101, *et. seq*.

29. At all relevant times, the Defendants, as a "single employer" employed 100 or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act and employed more than 50 employees at each Facility.

30. At all relevant times, each of the Defendants was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of the WARN Act and 20 C.F.R. § 639.3(a).

## **SINGLE EMPLOYER ALLEGATIONS**

31. The Defendants constituted a "single employer" of the Plaintiff and the Class Members in that, among other things:

*Common Ownership*

(a) Upon information and belief, in 2017, Cotton Creek purchased a majority of the shares in Dillon.

*Common Directors and Officers*

(b) Upon information and belief, at all relevant times, Dillon did not maintain its own Board of Directors.

(c) Upon information and belief, all decisions at Dillon were made by the Board of Directors of Cotton Creek.

*Dependency of Operations*

(d) Upon information and belief, at all relevant times, Dillon was completely dependent on Cotton Creek for its daily operating funds which was provided either directly by Cotton Creek or through financing arranged by Cotton Creek.

*Unity of Personnel Policies*

(e) Upon information and belief, at all relevant times, Dillon and Cotton Creek maintained common personnel policies which were put into place by Cotton Creek including payment of wages, as well as a common health care plan all of which was carried out by Cotton Creek.

(f) Upon information and belief, at all relevant times, management-level personnel decisions at Dillon were made by Cotton Creek.

6

*(g)* Specifically, upon information and belief, Charles Musgrove ("Musgrove"), the President of Dillon was asked to step down shortly before the mass layoffs/plant closure by Cotton Creek.

*(h)* Upon information and belief, after Musgrove stepped down, shortly before the mass layoffs/plant closure, Cotton Creek installed Michael Cloonen, the former President of Coal City Cob Company--another Cotton Creek trucking company investment--as the new President of Dillon.

*(i)* Upon information and belief, the decision to order a mass layoff and/or plant closing without providing a WARN notice was made by Cotton Creek on behalf of Dillon.

***De Facto Control***

*(j)* Upon information and belief, at all relevant times, Cotton Creek maintained sole control over all critical business decisions made on behalf of Dillon including decisions relating to Plaintiff's and the Class' employment and specifically, the decision to shut down the Facilities without providing WARN notice.

*(k)* Upon information and belief, in June 2021, Cotton Creek contacted Development Specialists, Inc. ("DSI"), a company which provides turnaround consulting, liquidating trustee and financial restructure advice, as to how Cotton Creek should implement a shutdown of the Dillon Facilities.

*(l)* Upon information and belief, when DSI advised that it (DSI) should come down to the Facilities to assess, Cotton Creek adamantly refused as the appearance of a liquidation company at the Facilities would cause drivers to quit.

    *(m)* Upon information and belief, on the morning of August 31, 2021, George Beck, Senior Associate at Cotton Creek, asked for a call with Michael Cloonen and three Dillon regional managers-Will Clohecy, Patrick Feeny and Wayne Laney.

    *(n)* Upon information and belief, on the call, George Beck of Cotton Creek directed the regional managers to immediately terminate the employees.

    *(o)* Upon information and belief, the purported notice provided to some employees in connection with the mass layoff and/or plant closure was sent by Michael Cloonen, the newly appointed President of Dillon at the request of Cotton Creek.

    *(p)* Upon information and belief, at all relevant times, all management-level personnel hiring and firing at Dillon, were conducted by Cotton Creek.

    *(q)* Upon information and belief, upon the closure of Dillon, Cotton Creek transferred some trucks to its other subsidiary, Coal City Cob Company.

    *(r)* Upon information and belief, the decision to shut down the Facilities without providing proper WARN notice was made by Cotton Creek on behalf of Dillon, as a single employer.

32. On or about August 31, 2021, Defendants, as a single employer, ordered the "mass layoff" and/or "plant closing" of the Facilities as those terms are defined by 29 U.S.C. § 2101(a).

33. The Plaintiff and the Class Members who were terminated by Defendants as a result of Defendants ordering the mass layoff and/or plant closing at the Facilities on or about August 31, 2021 were "affected employees" as defined by 29 U.S.C. § 2101(a)(5) of the WARN Act.

34. The mass layoff and/or plant closing at the Facilities resulted in "employment losses," as that term is defined by the WARN Act for at least fifty (50) of Defendants' employees as well as 33% of Defendant's workforce at the Facilities, excluding "part-time employees," as that term is defined by the WARN Act.

35. The Plaintiff and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104 (a)(7).

36. Pursuant to Sections 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 *et. seq.*, Defendants were required to provide at least 60 days prior written notice of the termination or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

37. Defendants failed to provide at least sixty (60) days prior notice to the Class Members terminations and also failed to provide notice prior to their terminations setting forth the basis for reduced notice as required by the WARN Act.

38. The Defendants failed to pay the Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

39. As a result of Defendants' failure to pay the wages, benefits and other monies as asserted above, the Aggrieved Employees were damaged in an amount equal to the sum of the Class Members unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

## **VACATION CLAIM**

40. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

41. During Plaintiff's employment with Defendants, Defendants maintained a vacation pay policy whereby employees whose employment was terminated were entitled to pay for unused vacation time accrued to the effective date of termination.

42. Defendant was therefore obligated to pay Plaintiff and the Class in full for their accrued but unused vacation time upon their terminations but failed to do so.

43. Plaintiff and the Class Members are therefore entitled to payments for accrued but unused vacation time which was due and owing upon their terminations.

## JURY DEMAND

44. On behalf of themselves and a class of Other Similarly Situated Employees, Plaintiff demands a trial by jury in this case.

**WHEREFORE**, the Plaintiff and Class Members demand judgment against the Defendants as follows:

a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act;

b. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C §2104(a)(5), Plaintiff and the Class Members constitute a single class;

c. An amount equal to the sum of accrued but unpaid vacation as of the termination date of Plaintiff and the Class Members;

d. Interest as allowed by law on the amounts owed under the preceding paragraphs;

e. Appointment of the undersigned attorneys as Class Counsel;

f. Appointment of Plaintiff as the Class Representative and payment of reasonable compensation for his services as such;

g. The reasonable attorneys' fees and the costs and disbursements the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. §2104(a)(6); and

h. Such other and further relief as this Court may deem just and proper.

Dated: September 30, 2021

By: /s/ James E. Huggett
**MARGOLIS EDELSTEIN**
James E. Huggett (#3956)
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
Phone 302-888-1112
Fax 302-888-1119

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
Johnathan Miller
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

Cooperating Counsel for
THE SUGAR LAW CENTER FOR ECONOMIC
& SOCIAL JUSTICE, a non-profit law firm

*Attorneys for Plaintiff*