**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BRIAN HOGG, STEVE RUGGIERO, DANNY WHEATON and THOMAS HOVIS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DILLON LOGISTICS, INC.; BURR RIDGE PROPERTIES INC; BURR RIDGE PROPERTIES RE HOLDINGS, LLC; BURR RIDGE TRANSPORT INC.; DILLON ELMENDORF, LLC; DILLON FLEET SERVICES INC.; DILLON LEASING GROUP, INC.; DILLON LEASING, LLC, and DILLON MEMPHIS LLC,<br>Defendants.<br>-------------------------------------------------------<br>CORY SIEGESMUND, on behalf of himself and a class of those others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DILLON LOGISTICS, INC.<br><br>Defendant. | **Case No.: 1:21-cv-01299-MN** |

**MOTION FOR ORDER (1) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT; (2) APPROVING FORM AND MANNER OF NOTICE TO THE CLASS; (3) SCHEDULING A FINAL FAIRNESS HEARING FOR THE FINAL CONSIDERATION AND APPROVAL OF THE SETTLEMENT AGREEMENT AND (4) FINALLY APPROVING THE SETTLEMENT AGREEMENT**

Plaintiffs Brian Hogg, Thomas Hovis, Steve Ruggiero, Cory Siegesmund, and Danny

Wheaton (the "Plaintiffs"), on behalf of themselves and certain putative Class Members, as

defined herein (the "Class Members"), by and through their counsel of record, submit this

Motion for an Order: (1) preliminarily approving the *Settlement and Release Agreement* (the

"Agreement")[1] between Plaintiffs and (a) Dillon Fleet Services Inc., Dillon Logistics, Inc. ("Dillon Logistics"), Burr Ridge Transport Inc., Dillon Leasing Group, Inc., Dillon Leasing, LLC,  Burr Ridge Properties Inc., Burr Ridge Properties RE Holdings, LLC; Dillon Elmendorf, LLC, and Dillon Memphis LLC (the "Assignors"); and (b) Dillon ABC, a Delaware Series LLC ("Assignee"), as a nominal party and for the purposes of settlement only, and pursuant to the authority granted to the Assignee by the Chancery Court of the State of Delaware in In re: Dillon Fleet Services, Inc., et al., Case No. 2021-0785-PAF (the "Delaware State ABC Proceeding") (the Plaintiffs, the Assignors, and the Assignee, each individually, a "Party" and collectively, the "Parties") pursuant to Federal Rule of Civil Procedure 23; (2) certifying a Class (the "Class") for settlement purposes only; (3) approving the form and manner of notice to the Class (the "Class Notice"); (4) scheduling a Final Fairness Hearing for the final consideration and approval of the Agreement; and (5) Finally Approving the Agreement (the "Settlement Motion").  In support of this Settlement Motion, the Plaintiffs respectfully submit the following:

### Jurisdiction

1.      This Court has jurisdiction over this Settlement Motion under 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).  Venue of this proceeding and this Settlement Motion is proper in this district pursuant to 29 U.S.C. § 2104(a)(5).

### Background

2.      On September 10, 2021, the Assignors assigned all of their assets to the Assignee

---

[1] Capitalized terms not otherwise defined in this Settlement Motion shall have the meanings provided in the Settlement Agreement.

to administer for the benefit of the Assignors' creditors through a General Assignment for the Benefit of Creditors, as amended (the "Assignment").

3.      On September 17, 2021, the Assignee commenced the Delaware State ABC Proceeding in the Chancery Court of the State of Delaware (the "Delaware Chancery Court").

4.      Prior to the Assignment, Dillon Logistics, a trucking company, maintained facilities located in (i) Bartow, Tampa, and Mulberry, Florida; (ii) Atlanta and Savannah, Georgia; (iii) Burr Ridge and Chicago, Illinois; (iv) Bricknell, Indiana; (v) Heidelberg, Mississippi; (vi) Medina, Ohio; and (vii) Dallas, Texas (collectively, the "Facilities").

5.      On or about August 31, 2021, Dillon Logistics terminated substantially all of its employees.

6.      After August 31, 2021, (i) two putative class-action lawsuits (styled *Brian Hogg et al. v. Dillon Logistics, Inc., et al.*, Case No. 1:21-cv-01299 (D. Del.) (the "Delaware Federal District Court Action") and *Cory Siegesmund v. Dillon Logistics, Inc.*, Case No. 21-cv-02107 (M.D.Fla.) (the "Florida District Court Action")) were filed and, wherein, the Plaintiffs asserted that one or more of the Assignors violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN Act") in connection with Dillon Logistics' termination of its employees; and (ii) the Florida District Court Action was transferred to and is now pending with the Delaware Federal District Court Action in the United States District Court for the District of Delaware ("Delaware Federal District Court") (the Florida District Court Action and the Delaware Federal District Court Action together, the "Federal Litigation").

7.      Prior to the transfer of the Florida District Court Action to Delaware, Plaintiff Cory Siegesmund, Thomas Hovis and Danny Wheaton were petitioning creditors, in an involuntary petition commenced against Dillon Logistics under chapter 7 of the Bankruptcy

Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. In light of the bankruptcy filing, the Florida District Court stayed the Florida District Court Action. Ultimately, the Bankruptcy Court dismissed the bankruptcy petition and ordered that Siegesmund and those similarly situated be accorded priority status on their WARN claims as part of the Assignment.

8.      Plaintiffs and certain other putative Class Members filed various proofs of claim concerning the alleged WARN Act violations in the Delaware State ABC Proceeding ("Delaware Proofs of Claim").

9.      Since the filing of the Federal Litigation, the Parties (i) exchanged pertinent information underlying the claims raised therein, (ii) actively engaged in settlement negotiations and in a day-long mediation session conducted by the Hon. Diane M. Welsh (retired) on August 5, 2022, and (iii) in connection with the mediation, exchanged comprehensive mediation statements and other information after the mediation session concluded.

10.     The Plaintiffs contend that the claims asserted in the Federal Litigation have merit, they have engaged in a thorough investigation of the facts and the law that allegedly support those claims, and, based on arm's-length negotiations between the Parties and their counsel, as facilitated through the mediation and Judge Welsh, the Plaintiffs and their counsel have determined that this Agreement and the settlement embodied therein are fair, reasonable, adequate, and in the best interests of the putative Class Members.

11.     The Assignors and Assignee (i) vigorously deny all of the claims asserted in the Federal Litigation, deny any wrongdoing on their part, and deny any liability to the Plaintiffs and the putative Class Members; and (ii) have conducted a thorough investigation and evaluated the risks and potential cost of litigating the issues raised in the Federal Litigation and the benefits of

this Agreement, and, based on that evaluation, the Assignors and Assignee desire to settle the Federal Litigation pursuant to the terms and conditions contained in the Agreement.

12.     The Agreement, for which the Plaintiffs seek this Court's approval, is annexed hereto as Exhibit "1."

13.     The Agreement includes the Parties' agreement to conditional certification of a class for settlement purposes only, which, to the best of the Parties' information and belief, encompasses 432 Class Members, excluding officers or directors of any of the Assignors, and is comprised of employees who were directly employed by Dillon Logistics and who worked at or reported to the Facilities, were terminated without cause on their part on or about August 31, 2021, or thereafter, who do not file a timely request to opt-out of the Class.

14.     The Agreement is made for the sole purpose of settlement of the Federal Litigation and Released Claims as described therein; and is expressly conditioned upon the entry of the Final Order and Judgment and Effective Date, as defined therein.

**<u>Class Certification for Settlement Purposes Only</u>**

15.     Where, as in this case, the Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23.  *See Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3d Cir. 2005).

16.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618; *accord Community Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification."  *Community Bank*,

418 F.3d at 299; *see General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only … the court preserves the defendant's ability to contest certification should the settlement fall apart.")

17.     Subdivisions (a) and (b) of Civil Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621.

18.     To be certified, a class must satisfy the four requirements of Civil Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Fed. R. Civ. P. 23; *see Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the requirements of Civil Rule 23(b)(1), (2) or (3).  In this case, the Parties have agreed to conditional certification under Civil Rule 23(b)(3), "the customary vehicle for damage actions."  *Id*.  In order to satisfy a class under Civil Rule 23(b)(3), the court must make two additional findings, predominance and superiority.  That is, "[i]ssues common to the class must predominate over individual issues, and the class device must be superior to other means of handling the litigation."  *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa. 2008).  The proposed settlement Class meets each of the foregoing elements, as set forth below.

(a)     **Numerosity**:  Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). "No single magic number exists satisfying the numerosity requirement." *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 1989). However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates*, 248 F.R.D. at 440 (*citing Stewart v. Abraham*, 275 F.3d

220, 226-27 (3d Cir. 2001)).  The numerosity factor of Fed. R. Civ. P. 23(a)(1) is met because the proposed Class numbers more than 400 former employees, making joinder of Class Members impracticable.

(b)      **Commonality:** The commonality requirement requires existence of at least one question of law or fact common to the Class.  Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc*., 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, *Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007), and does not require "an identity of claims or facts among class members."  *Behrend*, 245 F.R.D. at 202.  The  commonality factor of Fed. R. Civ. P. 23(a)(2) is met because there are questions of law or fact common to every member of the Class, namely, (i) whether Assignors violated the 60-day notice requirement under the WARN Act; (ii) whether Assignors were obligated to pay the Class Members sixty (60) days' wages and benefits and, if so, (iii) whether attorneys' fees are to be awarded to the Class Members, as the prevailing party.  Any differences in the issues affecting Class Members' circumstances (for example, the precise day of layoff, rates of pay, and levels of benefits under the WARN Act on the date of their layoff), do not outweigh the questions of law and fact that are common to every Class Member.

(c)      **Typicality**:  Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v.*

*Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (*quoting Baby Neal*, 43 F.3d at 55); *see* Fed. R. Civ. P. 23(a)(3).  "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class."  *Powers*, 245 F.R.D. at 236.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Beck*, 457 F.3d at 295-96 (*quoting Baby Neal*, 43 F.3d at 55).  The typicality factor of Fed. R. Civ. P. 23(a)(3) is met here, as the claims of Plaintiffs, who are the representative parties, are typical of the claims of the Class..  Plaintiffs' claims are based on the same set of facts as the other Class Members. Further, each Class Member's claim would be impractical and inefficient to litigate on an individual basis and that this class action is the superior method of adjudication.  Accordingly, the Court should find, for settlement purposes only, that the typicality requirement is met.

(d)    **Adequacy of Class Representatives:**  With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D. at 441.  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class."  *Beck*, 457 F.3d at 296.  Thus, the court must determine "whether

the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185. The requirements of Fed. R. Civ. P. 23(a)(4) are met based on the following. Plaintiffs have no conflict of interest with other Class Members and have and will diligently prosecute the WARN claims and represent the interests of the Class. Plaintiffs have engaged counsel that have extensive experience in WARN class action litigation, having collectively been appointed class counsel in well over100 WARN Act cases. Plaintiffs' counsel have diligently investigated the facts relating to the alleged "plant closings" in this matter. For purposes of this Settlement only, Plaintiffs shall be named as Class Representatives and The Gardner Firm, P.C., Lankenau & Miller, LLP, Kwall Barack Nadeau PLLC and David Christian Attorneys LLC shall be appointed Class Counsel. Facts supporting the adequacy of the proposed Class Representatives and proposed Class Counsel are set forth in the Olsen Declaration, attached hereto as Exhibit 2. The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members.

19. The proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(3). Common questions of law and fact predominate over the individual issues. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine

controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *Community Ban*k, 418 F.3d at 309.

20.     Just as typicality exists, predominance also exists. All of the claims arise from an alleged violation of the WARN Act resulting from the Assignors' shutdown on or about August 31, 2021. Accordingly, the Court should find that the predominance requirement is met.

21.     Civil Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

22.     Civil Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

23.     The common questions of law and fact detailed that affect all members of the proposed Class predominate over any questions affecting only individual members. A class

action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons:

      (a)    No proposed Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

      (b)    No other lawsuits other than those filed by Plaintiffs concerning the WARN Act rights of any proposed Class member is currently pending, to the Plaintiffs' knowledge.

      (c)    Concentrating all potential litigation concerning the WARN Act rights of the proposed Class members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Class members.

      (d)    Administration of this action as a class action will not be complicated or difficult because the names and addresses of the proposed Class Members have been established from Dillon Logistics' business records.

24.    For the foregoing reasons, the Plaintiffs seek a Court order certifying this case as a class action for settlement purposes only as to the WARN Act claims of the proposed Class Members, and seek appointment of The Gardner Firm, P.C., Lankenau & Miller, LLP, Kwall Barack Nadeau PLLC and David Christian Attorneys LLC  as class counsel and appointment of Plaintiffs as the Class Representatives.

**The Settlement Agreement**

25.    The Plaintiffs ask the Court to approve the Agreement, for the following reasons:

(a)    The Agreement reflects the result of arms' length, good faith negotiations over many months.

(b)    The Agreement reflects the recognition by the Parties that there are significant, complex issues regarding the application of the WARN Act, and the various cases and regulations interpreting the Act to the facts of the case.  In this regard, the Parties disagree as to whether Assignors had any obligation or liability under the WARN Act with respect to the proposed Class Members' claims.  If Plaintiffs were successful on the WARN Act claims, however, they assert that they could have a claim against  Assignors and the Assignment Estate for over $2M.

(c)    To avoid extensive, costly litigation over these issues, and the depletion of the assets in the Assignment Estate, the Parties actively engaged in settlement negotiations, including a full day mediation conducted by the Hon. Diane M. Welsh (Retired) on August 5, 2022 and in connection with the mediation, exchanged comprehensive mediation statements prior to the mediation and other information after the mediation session concluded.

(d)    As a result of the Parties' mediation and negotiations, and as fully set forth in the Agreement, the Parties wish to fully and finally compromise, settle and resolve any and all demands, claims, damages and causes of action, present or future, relating to the WARN Act, of the Named Plaintiffs and the proposed Class Members on the terms and conditions of the Agreement.

(e)      As shown above, the Assignors and Assignee do not oppose and agree to certification of the Federal Litigation as set forth in the Agreement, for notice and settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3), consisting of persons identified from the Assignors' books and records and who are reflected on <u>Schedule 1</u> to the Agreement, excluding officers or directors of any of the Assignors, who were directly employed by Dillon Logistics and worked at or reported to the Facilities and were terminated without cause on their part on or about August 31, 2021, or thereafter, and who do not file a timely request to opt-out of the Class.

(f)      Plaintiffs Brian Hogg, Steve Ruggiero, Danny Wheaton, Thomas Hovis and Cory Siegesmund shall be named as Class Representatives and The Gardner Firm, P.C., Lankenau & Miller, LLP, Kwall Barack Nadeau PLLC and David Christian Attorneys LLC are appointed Class Counsel.

(g)      Pursuant to the terms of the Settlement, the Gross Settlement Amount is Eight Hundred Eighty-Seven Thousand Dollars ($887,000), as shown on Schedule 1, hereto.  Upon the Effective Date (as defined in the Agreement), the Assignee shall pay $887,000 to the Qualified Settlement Fund (defined in the Settlement), according to instructions to be provided by the Settlement Administrator (defined in the Settlement), for distribution by the Settlement Administrator.  The Assignee and Assignors represent and warrant in the Agreement that, to the best of their present, actual knowledge, the Gross Settlement Amount is the entire

unencumbered amount available to the Assignee to resolve the Federal
Litigation, taking into account all current and anticipated secured and
administrative claims to be paid under the Assignment.  Further, the
Assignee asserts in the Agreement that it has specific authority to take
action for the Assignors pursuant to the Assignment and as approved by
the Delaware Chancery Court.  The Assignee asserts that this authority
includes, without limitation, the authority to (i) execute the Agreement on
behalf of the Assignors and (ii) effectuate the terms of the Agreement and
settlement embodied in it, including, without limitation, the payment of
the Gross Settlement Amount to the Settlement Fund, as approved by the
Court, subject to giving notice of the Agreement to the Delaware
Chancery Court as provided in the Agreement.  In connection with
exercising its authority under the Assignment, the Assignee shall file, with
the assent of the Plaintiffs, a motion to intervene in the Federal Litigation
for the sole purpose of effectuating the terms of this Agreement and
settlement embodied herein.  Should this Agreement not be approved or be
deemed void, or should the Effective Date not occur for any reason, the
Assignee shall be permitted to withdraw its intervention unilaterally and
such withdrawal will not be opposed by Plaintiffs or Class Counsel, but
such agreement not to oppose such withdrawal shall not act as a waiver of
any rights Plaintiffs may have to seek to add or join the Assignee to the
Federal Litigation by motion, which motion the Assignee may oppose.

The Assignee has filed its motion for limited intervention contemporaneously with the filing of this Settlement Motion.

(h)    The Settlement Costs (as defined in the Agreement) which include Class Counsel's Fees (as defined in the Agreement), Class Counsel's Expenses (as defined in the Agreement) and the Service Payments (as defined in the Agreement) shall be paid from the Gross Settlement Amount.  Following receipt of the Gross Settlement Amount in the QSF, the Settlement Administrator shall be responsible for handling all  aspects of the administration of the distribution of the Gross Settlement Amount, including, but not limited to, (a) the determination of the Employee Portions for each Class Member based on the Projected Net Pre-Tax Settlement Amount for each shown on Schedule 1, as well as the determination of the Employer Portions; (b) the preparation and mailing of settlement checks to each Class Member, based on the Projected Net Pre-Tax Settlement Amount for each shown on Schedule 1, minus the Employee Portions and the Employer Portions; (c) wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions that The Gardner Firm, PC will provide to the Settlement Administrator; (d) the withholding, transmittal, and reporting of all payroll taxes, and preparing and mailing of all W-2 Forms and/or 1099 Forms, where applicable; and (e) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses and and depositing uncashed

funds with any applicable state unclaimed funds agency in accordance with the Agreement. For avoidance of doubt, the Employer Portions shall be satisfied from the Gross Settlement Amount. The amount of each of the Class members' settlement distributions shall be included by the Settlement Administrator under the Class Member's name and social security number on a W-2 Form and any applicable state or local tax form to be distributed by the Settlement Administrator. The Projected Net Pre-Tax Settlement Amount per Class Member is reflected on Schedule 1 to the Agreement and allocated as follows: (a) Class Members shown in Dillon Logistics' records at Facilities other than Bartow, Mulberry, Savannah, and Tampa, and which had fewer than fifty (50) non-part-time employees, are allocated $250.00 each; and (b) Class Members shown in Dillon Logistics' records at the Bartow, Mulberry, Savannah, and Tampa Facilities are allocated a pro rata share of the remaining Projected Net Pre-Tax Settlement Amount based on Class Counsel's calculations, from available data, of their maximum theoretical WARN wage claim and which is, in no event, less than $250.00. The Settlement Administrator shall also establish the Settlement Website by the Notice Date, which website shall contain a copy of the Agreement, this Settlement Motion and any related court filings, and any other information required by the Court or mutually agreed by the Parties. The Settlement Website shall remain active until sixty (60) calendar days after the Effective Date.

(i)      Under no circumstances will any portion of the Gross Settlement Amount revert to the Assignors or the Assignee, except to the extent any putative Class Member opts-out of the Agreement. In such event, the Projected Net Pre-Tax Settlement Amount attributed to any putative Class Member who opts out of the settlement embodied in the Agreement shall be returned by the Settlement Administrator to the Assignee, on behalf of the Assignor, within five (5) days of the Effective Date, and shall be maintained in accordance with the Assignment.

(j)      The Settlement Administrator shall, as contemplated and described in the Agreement, distribute the Class Member checks, Class Counsel's Fees, Class Counsel's Expenses and Service Payments from the Gross Settlement Amount promptly following the Effective Date.  Checks will be mailed by the Settlement Administrator to the last known mailing address contained on Schedule 1, as provided by the Assignors,  or as updated by the Settlement Administrator or Class Counsel through its standard practices or as updated by a putative Class Member.

(k)      Should any Class Member fail to negotiate their settlement check or if such checks are returned as undeliverable, the Settlement Administrator shall deposit uncashed funds with any applicable state unclaimed funds agency in accordance with the Agreement.

(l)      The Agreement contemplates that any putative Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement, including Class Counsel's Fees, Class Counsel's Expenses and/or the

Service Payments must file on or before the Objection and Opt-Out Deadline a written objection with this Court and deliver the objection to the Parties in accordance with the procedure described in the Class Notice. Any Class Member who submits a timely objection as set forth above may appear at the Fairness Hearing with or without counsel at the putative Class Member's own expense.  Any Class Member who fails to comply with the provisions herein will not be permitted to object to the approval of this Agreement and upon the Effective Date, shall be bound by the terms of this Agreement.  The Agreement also contemplates that any putative Class Member may opt-out of the settlement embodied in the Agreement, if preliminarily approved by this Court, by sending a completed Opt-Out form, substantially similar to the form attached to the Class Notice, to Class Counsel in accordance with the procedure described in the Class Notice. If the aggregate number of opt-outs is greater than seven percent (7%) of the total number of putative Class Members, then the Assignee and Assignors may elect, at their sole discretion, to terminate this Agreement.   Such termination shall be made by written notice to Class Counsel within three (3) business days of the Objection and Opt-Out Deadline, as approved by this Court.  A termination of the Agreement based on the above shall have the same effect as the Agreement not being approved.

(m)     Upon the occurrence of both the Effective Date and payment of the Gross Settlement Amount by the Assignee in accordance with the Agreement,

the Plaintiffs and the Class Members bound by the Agreement and the

settlement embodied therein, and each of their respective heirs, legatees,

next-of-kin, representatives, beneficiaries, successors, and assigns

("Releasing Parties") will release, acquit, and forever discharge the

Assignors and Assignee, and each of their respective present, future, and

former administrators, advisors, agents (alleged, apparent, or actual),

affiliates, assigns, attorneys, directors (whether acting in such capacity or

individually), consultants, conservators, contractors, co-venturers,

creditors, departments, directors, divisions, distributors, employees,

independent contractors, insurers, joint ventures, managers, members,

nominees, officers, parents, partners, personal representatives,

predecessors, predecessors-in-interest, principals, privities, related entities,

representatives, resellers, shareholders, subdivisions, subsidiaries,

successors, successors-in-interest, retailers, wholesalers and each person

or entity acting or purporting to act for them or on their behalf, including,

without limiting the foregoing, CCC Advisors, LLC, Cotton Creek Capital

Management III, LLC, Cotton Creek Capital Management II, LLC, Cotton

Creek Capital Management LLC, and C7 Logistics, Inc.  ("Released

Persons"), from any and all manner of accounts, actions, agreements,

attorneys' fees, bills, bonds, causes of action, charges, claims, contracts,

controversies, costs, covenants, damages, debts, demands, dues,

executions, expenses, extents, interest, issues, judgments, losses,

liabilities, obligations, penalties, promises, reckonings, remedies, rights,

suits, sums of money, trespasses, and variances, of any nature whatsoever, known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, in law or equity, fixed or contingent, common law or statutory claims arising under or based upon the WARN Act as set forth in 29 U.S.C § 2104 and/or any comparable state or local mini-WARN Act statutes  ("Released Claims" or "Release"); acknowledge, represent, covenant, and warrant that the obligations imposed by the Release shall be forever binding, and that the Release may not be modified, amended, annulled, rescinded, or otherwise changed unless in writing signed and notarized by a duly authorized representative of the Assignors or Assignee to which the modification, amendment, annulment, rescission, or change applies, and which writing expressly refers to the Release and this Agreement; acknowledge, represent, covenant, and warrant that they have not made any assignment of any right, claim, or cause of action covered by the Release to any individual, corporation, or any other legal entity whatsoever; and acknowledge, represent, covenant, and warrant that they have full power, competence, and authority to execute and deliver the Release.

(n)     Immediately upon the occurrence of both the Effective Date and payment of the Gross Settlement Amount by the Assignee in accordance with the Agreement, any claims filed in the Delaware Chancery Court that are included in the Released Claims shall be deemed null and void and the

Assignee may use the Agreement and the Final Order and Judgment, as

needed, to effect dismissal of such claims.

**The Court Should Preliminarily Approve the Settlement Pursuant to Rule 23**

26.     After class certification, approval of a class settlement generally requires two

hearings:  one preliminary approval hearing and one final "fairness" hearing.  *Gates v. Rohm &*

*Hass Co.,* 248 F.R.D. 434, 442-43 (E.D. Pa. 2008); Manual for Complex Litigation § 30.632

(2004).  Once a settlement is preliminarily approved, notice of the proposed settlement and of the

fairness hearing is provided to class members.  Because the Settlement Agreement in this case

will be preliminarily approved pursuant to this Settlement Motion, notice of the conditional class

certification and proposed settlement can be combined in one notice.  *Gates*, 248 F.R.D. at 445;

*Collier v. Montgomery County Housing Authority*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing

Manual for Complex Litigation § 30.212 (2004)).  At the subsequent fairness hearing, class

members may formally object to the proposed settlement. *Gates,* 248 F.R.D. at 439.

27.     "The preliminary approval decision is not a commitment [to] approve the final

settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement

falls within the range of reason.'"  *Id.,* at 438 (*quoting from Smith v. Professional Billing &*

*Management Services, Inc.,* 2007 WL 4191749, at *1 (D. N.J. 2007)).  The preliminary approval

determination requires the Court to consider whether "(1) the negotiations occurred at arm's

length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in

similar litigation; and (4) only a small fraction of the class objected."  *In re General Motors*

*Corp. Pick Up Fuel Tank Products Liability Litigation,* 55 F.3d 768, 785-86 (3d Cir. 1995);

*Gates,* 248 F.R.D. at 444. When a class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *Gates*, 248 F.R.D. at 444.

28. The Settlement Agreement has no obvious deficiencies and, as demonstrated herein, falls well within the range of reason. Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

29. First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries, which included a full day mediation. The Parties have been in discussions with respect to the WARN litigation and claims since soon after they were filed and the Class is represented by counsel with extensive experience and expertise in WARN Act matters.

30. Second, the Parties exchanged a significant amount of information during settlement negotiations. In particular, the Assignee and Assignors provided extensive information to Class Counsel regarding the financial status and obligations of the Assignment Estate, as well as facts relating to their defenses. The Assignee and Assignors also shared payroll records and other employee information with Class Counsel.

31. Third, Class Counsel have collectively been appointed as class counsel in more than one hundred (100) WARN Act cases. Class Counsel have the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. They have exercised that judgment in this case with respect to the Settlement Agreement.

32. Accordingly, the Court should preliminarily approve the Settlement Agreement pursuant to Rule 23.

**The Contents of the Class Notice**

33.     The Plaintiffs submit that the proposed Class Notice, a copy of which is attached to the proposed Preliminary Approval Order (Exhibit A to the Settlement), meets the requirements of Fed. R. Civ.P. 23(c)(2)(B).  That rule, in pertinent part, provides as follows:

"The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;

- the definition of the class certified;

- the class claims, issues or defenses;

- that a class member may enter an appearance through counsel if the member so desires;

- that the court will exclude from the class any member who requests exclusion;

- the time and manner for requesting exclusion; and

- the binding effect of a class judgment on class members under Rule 23(c)(3)."

34.     The proposed Class Notice satisfies each of the foregoing requirements.  The Notice states the nature of the action, the definition of the Class, certified for settlement purposes only, the Class claims, and the issues and defenses.  The Notice also states that a proposed Class Member may enter an appearance through counsel, and that the Settlement, when approved, will be binding on all proposed Class Members.  The Notice also sets forth the terms of the proposed Settlement and the right of each proposed Class Member to opt-out or object to the proposed Settlement, as well as the timing and procedure to do so.  *See* Rule 23(e).  The Notice informs Class members that the court will exclude from the Class any member who requests exclusion. The Notice summarizes the claims to be released if the Settlement is approved and provides

proposed Class Members with their individualized, projected net settlement amounts after attorney fees and costs.  The Notice also apprises the proposed Class, among other things, that complete information regarding the Settlement is available upon request from Class Counsel that any proposed Class Member may appear and be heard at the hearing on approval of the Agreement. In addition, the notice informs the proposed Class Members of the request for the approval of attorneys' fees and costs to Class Counsel.  *See* Fed.R.Civ.P. 23(h).

### The Manner of Notice

35.     As to the manner of giving notice, Fed. R. Civ. P. 23(c)(2)B) provides, in pertinent part, as follows:

> "For any class certified under Rule 23(b)(3) the Court must direct to class
> members the best notice practicable under the circumstances including individual
> notice to all members who can be identified through reasonable effort."

36.     An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test.   Eisen v. Carlisle & Jacquelin et al., 417 U.S. 156 (1974) (individual mailings satisfy Rule 23 (c)(2));

37.     The Settlement provides that the Settlement Administrator will mail the notice by first class mail, postage prepaid, to the last known address of each of the proposed Class Members, as reflected on Schedule 1 or as updated by the proposed Class Members.  The mailing and the fairness hearing will be timed so that the Class Members will have not less than 35 days from the date of the mailing to opt-out or object to the Settlement Agreement and to appear by counsel.  The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.  In the case of any returned envelopes, Settlement Administrator and/or Class

Counsel will forward to such corrected addresses as they may be able to obtain through normal business practices and in accordance with the Agreement.

### The Court Should Finally Approve the Settlement Agreement Pursuant to Rule 23

38.     Pursuant to the Agreement, the Plaintiffs request that the Court set the Fairness Hearing to take place during 2022, subject to the Court's calendar, but in no event sooner than ninety (90) days following the date when notice is provided to appropriate federal and state officials in accordance with the Class Action Fairness Act, which notice shall be sent by the Settlement Administrator within two (2) business days of the filing of this Settlement Motion. At the Fairness Hearing, the Court should finally approve the Settlement.

39.     Civil Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." FED. R. CIV. P. 23(e). Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Community Bank,* MDL No. 1674, No. 03-0425, 2008 WL 3833271 at *5 (W.D. Pa. Aug. 15, 2008) (*quoting General Motors*, 55 F.3d at 785.).

40.     The Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of

the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  This list is not exhaustive. *Community Bank*, 2008 WL 3833272 at *6.

41.     The following *Girsh* factors strongly support approval of the Settlement Agreement: (a) litigation of the WARN Actions will be complicated, protracted and expensive, particularly since it involves two different forums—the Assignment matter and the DE District Court Action; (b) the Class Representatives support the Settlement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement and will not object to it; (c) the Settlement was reached after the essential facts had been thoroughly investigated by Class Counsel through multiple witness interviews and informal disclosures by the Assignee and Assignors and the Parties participated in a formal mediation and numerous settlement conferences; (d) the risk that the Class Representatives would be unable to establish liability was present because of the defenses asserted; (e) perhaps the biggest risk faced by the Class was the constantly diminishing Assignment Estate, and risk of depletion had this case been litigated to its conclusion and (f)  when considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness.  The settlement provides for payment of $887,000, representing approximately forty percent (40%) of the maximum theoretical WARN wage damage claims of the Class members who arguably worked at, or reported to, WARN covered facilities and, perhaps more importantly, as noted above, the Gross Settlement Amount is the entire unencumbered amount available to the Assignee to resolve the Federal Litigation, taking into account all current and anticipated secured and administrative claims to be paid under the Assignment. *See Community Bank*, 2008 WL

3833271 (finding that in light of the attendant risk a settlement representing approximately twelve percent (12.6%) of the prayer was reasonable).

42.     Based on the foregoing, the Court should approve the Settlement Agreement pursuant to Civil Rule 23.

WHEREFORE, by this Settlement Motion, the Plaintiffs request that the Court enter orders, substantially in the form annexed to the Settlement as Exhibits "A" and "B":  1) preliminarily approving the Settlement Agreement between the Parties; (2)  approving the form and manner of Notice to Class and the right to opt-out or object to the proposed Settlement Agreement; (3)  scheduling a Fairness Hearing for the final consideration and approval of the Settlement Agreement; (4) approving the Settlement Agreement on a final basis; and (5) granting such other relief as the Court deems necessary and appropriate.

Respectfully submitted,

By: /s/    James E. Huggett_____
**MARGOLIS EDELSTEIN**
James E. Huggett (#3956)
300 Delaware Avenue
Suite 800
Wilmington, DE 19801
Phone 302-888-1112
Fax 302-888-1119


**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
Johnathan Miller
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

**KWALL BARACK NADEAU PLLC**
Ryan D. Barack
Florida Bar No. 0148430
Primary: rbarack@employeerights.com
Secondary: jackie@employeerights.com
304 S. Belcher Road, Suite C
Clearwater, Florida 33765
(727) 441-4947
(727) 447-3158 Fax

**DAVID CHRISTIAN ATTORNEYS LLC**
David C. Christian II (IL #6274704)
105 W. Madison St., Suite 1400
Chicago, IL 60602
312-282-5282
dchristian@dca.law

*Attorneys for Plaintiffs and the Putative Class*

Dated:  Wilmington, Delaware
           September 12, 2022