# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement, dated as of September 9, 2022 (this "**Agreement**"), is entered into by and among: (i) Plaintiffs Brian Hogg, Thomas Hovis, Steve Ruggiero, Cory Siegesmund, and Danny Wheaton (the "**Plaintiffs**"), on behalf of themselves and certain Class Members, as defined herein (the "**Class Members**"); (ii) Dillon Fleet Services Inc., Dillon Logistics, Inc. ("**Dillon Logistics**"), Burr Ridge Transport Inc., Dillon Leasing Group, Inc., Dillon Leasing, LLC, Burr Ridge Properties Inc., Burr Ridge Properties RE Holdings, LLC; Dillon Elmendorf, LLC, and Dillon Memphis LLC (the "**Assignors**"); and (iii) Dillon ABC, a Delaware Series LLC ("**Assignee**"), as a nominal party and for the purposes of this Agreement only, and pursuant to the authority granted to the Assignee by the Chancery Court of the State of Delaware in *In re: Dillon Fleet Services, Inc., et al.*, Case No. 2021-0785-PAF (the "**Delaware State ABC Proceeding**") (the Plaintiffs, the Assignors, and the Assignee, each individually, a "**Party**" and collectively, the "**Parties**").

## SECTION I—RECITALS

**WHEREAS**, on September 10, 2021, the Assignors assigned all of their assets to the Assignee to administer for the benefit of the Assignors' creditors through a General Assignment for the Benefit of Creditors, as amended (the "**Assignment**");

**WHEREAS**, on September 17, 2021, the Assignee commenced the Delaware State ABC Proceeding in the Chancery Court of the State of Delaware (the "**Delaware Chancery Court**");

**WHEREAS**, prior to the Assignment, Dillon Logistics, a trucking company, maintained facilities located in (i) Bartow, Tampa, and Mulberry, Florida; (ii) Atlanta and Savannah, Georgia; (iii) Burr Ridge and Chicago, Illinois; (iv) Bricknell, Indiana; (v) Heidelberg, Mississippi; (vi) Medina, Ohio; and (vii) Dallas, Texas (collectively, the "**Facilities**");

**WHEREAS**, on or about August 31, 2021, Dillon Logistics terminated substantially all of its employees;

**WHEREAS**, after August 31, 2021, (i) two putative class-action lawsuits (styled *Brian Hogg et al. v. Dillon Logistics, Inc., et al.*, Case No. 1:21-cv-01299 (D. Del.) (the "**Delaware Federal District Court Action**") and *Cory Siegesmund v. Dillon Logistics, Inc.*, Case No. 21-cv-02107 (M.D.Fla.) (the "**Florida District Court Action**") were filed and, wherein, the Plaintiffs asserted that one or more of the Assignors violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. ("**WARN Act**") in connection with Dillon Logistics' termination of its employees; and (ii) the Florida District Court Action was transferred to and is now pending with the Delaware Federal District Court Action in the United States District Court for the District of Delaware (the "**Court**") (the Florida District Court Action and the Delaware Federal District Court Action together, the "**Federal Litigation**");

**WHEREAS,** prior to the transfer of the Florida District Court Action to Delaware, Plaintiff Cory Siegesmund, Thomas Hovis and Danny Wheaton were petitioning creditors in an involuntary petition commenced against Dillon Logistics under chapter 7 of the Bankruptcy Code in the United

States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("**Bankruptcy Court**"). In light of the bankruptcy filing, the Florida District Court stayed the Florida District Court Action. Ultimately, the Bankruptcy Court dismissed the bankruptcy petition and ordered that Siegesmund and those similarly situated be accorded priority status on their WARN claims as part of the Assignment**;**

**WHEREAS**, Plaintiffs and certain other Class Members filed various proofs of claim concerning the alleged WARN Act violations in the Delaware State ABC Proceeding ("**Delaware Proofs of Claim**");

**WHEREAS**, since the filing of the Federal Litigation, the Parties (i) exchanged pertinent information underlying the claims raised therein, (ii) actively engaged in settlement negotiations and in a day-long mediation session conducted by the Hon. Diane M. Welsh (retired) on August 5, 2022, and (iii) in connection with the mediation, exchanged comprehensive mediation statements and other information after the mediation session concluded;

**WHEREAS**, the Plaintiffs contend that the claims asserted in the Federal Litigation have merit, they have engaged in a thorough investigation of the facts and the law that allegedly support those claims, and, based on arm's-length negotiations between the Parties and their counsel, as facilitated through the mediation and Judge Welsh, the Plaintiffs and their counsel have determined that this Agreement and the settlement embodied herein are fair, reasonable, adequate, and in the best interests of the putative Class Members;

**WHEREAS**, the Assignors and Assignee (i) vigorously deny all of the claims asserted in the Federal Litigation, deny any wrongdoing on their part, and deny any liability to the Plaintiffs and the putative Class Members; and (ii) have conducted a thorough investigation and evaluated the risks and potential cost of litigating the issues raised in the Federal Litigation and the benefits of this Agreement, and, based on that evaluation, the Assignors and Assignee desire to settle the Federal Litigation pursuant to the terms and conditions contained herein; and

**WHEREAS**, (i) this Agreement is made for the sole purpose of settlement of the Federal Litigation and Released Claims as described herein; and (ii) the settlement embodied in this Agreement is expressly conditioned upon the entry of the Final Order and Judgment and Effective Date, as defined herein.

**NOW**, **THEREFORE**, for adequate consideration as set forth herein and as acknowledged by the Parties, it is hereby stipulated and agreed, by and among the Parties, by and through their respective counsel, that: (i) the Parties desire to fully and finally resolve the Federal Litigation and shall seek preliminary and final approval of this Agreement and the settlement embodied herein from the Court, as provided by Federal Rule of Civil Procedure 23(e); and (ii) upon such approval by the Court, a final order and judgment shall be entered fully and finally resolving the Federal Litigation upon the terms and conditions set forth herein or as modified by the Court with the mutual agreement of the Parties.

## SECTION II—DEFINITIONS

In addition to terms defined in the preamble and Section I, as well as in other sections of this Agreement, the following terms shall have the following meanings. Some definitions include capitalized terms that are defined later in this section:

**1.** "**Class**" and "**Class Member(s)**" mean the 432 persons identified from the Assignors' books and records and are reflected on Schedule 1 hereto, excluding officers or directors of any of the Assignors, who were directly employed by Dillon Logistics and worked at or reported to the Facilities and were terminated without cause on their part on or about August 31, 2021, or thereafter, and who do not file a timely request to opt-out of the Class.

**2.** "**Class Counsel**" means The Gardner Firm, P.C., Lankenau & Miller, LLP, Kwall Barack Nadeau PLLC, and David Christian Attorneys LLC.

**3.** "**Class Counsel's Expenses**" means Class Counsel's expenses and costs related to the Federal Litigation, this Agreement and the settlement embodied herein, any Delaware Proofs of Claim released herein, and the Bankruptcy Court proceeding, including without limitation all of the Settlement Administrator's expenses and costs in administering the settlement embodied in this Agreement, such as the cost of sending the Class Notice and any checks to the Class Members, as well as maintaining the Settlement Website and other administrative tasks or duties provided herein, and Plaintiffs' mediation-related expenses. Class Counsel's Expenses are projected, as shown on Schedule 1 hereto, to be approximately $32,000.

**4.** "**Class Counsel's Fees**" means one third of the Gross Settlement Amount, as reflected on Schedule 1, to be paid to Class Counsel.

**5.** "**Class Notice**" means the notice summarizing this Agreement and settlement embodied herein, as approved by the Court, to be sent to the putative Class Members as set forth herein by regular mail or e-mail. The Class Notice must be substantially similar to the form attached to the Preliminary Approval Order, which is attached as Exhibit A hereto.

**6.** "**Defense Counsel**" means Greenberg Traurig, LLP and Gellert Scali Busenkell & Brown, LLC.

**7.** "**Effective Date**" means the later of: (a) the expiration of the time to file or notice any appeal from the Final Order and Judgment; or (b) the date of final affirmance of any appeal from the entry of the Final Order and Judgment, as modified by the Court and approved by the Parties.

**8.** "**Fairness Hearing**" means the hearing that is to take place after the entry of the Preliminary Approval Order and Notice Date for purposes of, among other things: (a) entering the Final Order and Judgment and fully and finally resolving the Federal Litigation; and (b) determining whether this Agreement and the settlement embodied herein should be approved as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

9. **"Final Order and Judgment"** means the final judgment of the Court approving this Agreement and its terms. The Final Order and Judgment must be substantially similar to the form attached as Exhibit B hereto.

10. **"Gross Settlement Amount"** means Eight Hundred and Eighty-Seven Thousand Dollars ($887,000) to be paid by the Assignee in consideration for, and in conformity with, this Agreement, as approved by the Court.

11. **"Net Settlement Amount"** means the Gross Settlement Amount *less* all Settlement Costs as further described herein.

12. **"Projected Net Pre-Tax Settlement Amount"** means the Gross Settlement Amount, *less* all Settlement Costs and the Service Payments to be divided among the Class Members, as projected on Schedule 1, as approved by the Court. For avoidance of doubt, the Projected Net Pre-Tax Settlement Amount does not reflect any deductions to be made by the Settlement Administrator for any tax related payments, including the Employee Portion and Employer Portion as described herein.

13. **"Notice Date"** means the date the Class Notice is sent to the putative Class Members, as provided herein. The Notice Date shall be no later than five (5) calendar days after entry of the Preliminary Approval Order, unless otherwise provided by the Court.

14. **"Objection and Opt-Out Deadline"** means the deadline in the Preliminary Approval Order by which any completed Opt-Out Form or Objection must be received by the designated recipients and in accordance with the procedures set forth in the Preliminary Approval Order and the Class Notice, which shall be thirty-five days (35) calendar days from the Notice Date, unless otherwise provided in the Preliminary Approval Order.

15. **"Preliminary Approval Order"** means the order preliminarily approving this Agreement and settlement embodied herein, and conditionally certifying the Class, as approved by the Court. This order must be substantially similar to the form attached hereto as Exhibit A.

16. **"QSF"** means the "qualified settlement fund" established by the Settlement Administrator within the meaning of United States Treasury Regulation § 1.468B-1, before the Effective Date, which shall be established in an non-interest bearing account, to which the Assignee shall pay the Gross Settlement Amount. The QSF shall be named *DILLON WARN CLASS QSF*. The Assignee shall be the "transferor" and the Settlement Administrator shall be the "administrator" of the QSF within the meaning of United States Treasury Regulations §§ 1.468B-1(j)(2) and 1.468B-2(k)(3), respectively. As a result, the Settlement Administrator will be responsible for all tax withholding and reporting obligations of any payments made from the QSF, including any reporting required on IRS Form W-2 and IRS Form 1099 for distributions made from the QSF, as provided herein. The Assignors and Assignee shall have no liability or responsibility whatsoever for taxes of the QSF, if any.

17. **"Service Payments"** means a one-time payment of $5,000 each to Brian Hogg, Steve Ruggiero, Danny Wheaton, Thomas Hovis and Cory Siegesmund for their services with regard to the pursuit and prosecution of the Federal Litigation.

18.     "**Settlement Administrator**" means American Legal Claim Services LLC.  The Settlement Administrator shall be responsible for sending the Class Notice and all aspects of the administration of the distribution of the Gross Settlement Amount, including, but not limited to, (a) the formation of the QSF to accept, distribute, and otherwise administer the settlement embodied in this Agreement, including wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions that The Gardner Firm, PC will provide to the Settlement Administrator; (b) the determination of the tax and withholding amounts (i.e. the "**Employee Portions**") for each Class Member based on the Projected Net Pre-Tax Settlement Amount for each shown on Schedule 1, as well as the determination of the amount of all applicable employer tax contributions, including, without limitation, the employer's share of FICA/Medicare tax and any federal and state unemployment tax due ("**Employer Portions**"); (c) the preparation and mailing of settlement checks to each Class Member; (d) the withholding, transmittal, and reporting of all payroll taxes, and preparing and mailing of all W-2 Forms and/or 1099 Forms, where applicable, (e) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses, and (f) depositing uncashed funds with any applicable state unclaimed funds agency in accordance with this Agreement.  For avoidance of doubt, the Employer Portions are part of the Settlement Costs, and shall be satisfied from the Gross Settlement Amount.

19.     "**Settlement Costs**" means all fees and costs to be paid from the Gross Settlement Amount, which include but are not limited to Class Counsel's Fees, Class Counsel's Expenses, and the Service Payments.  For the avoidance of doubt, with the exception of the cost of sending of notice to federal and state regulators pursuant to the Class Action Fairness Act, the Assignee and Assignors shall not be responsible for any costs, expenses, fees, or payments of any kind beyond the payment of the Gross Settlement Amount.

20.     "**Settlement Website**" means a website established by the Settlement Administrator, which website shall contain a copy of this Agreement, Plaintiffs' Settlement Motion and any related court filings, and any other information required by the Court or mutually agreed by the Parties.

21.     All references to "**days**" shall be interpreted to mean calendar days, unless otherwise noted.  When a deadline or date falls on a weekend or a legal holiday, the deadline or date shall be extended to the next business day that is not a weekend or legal holiday.

22.     All references to "**his**," "**her**," and similar terms are intended to be gender-neutral and apply equally to persons who are businesses, organizations, or other non-natural persons.

23.     Other terms defined in this Agreement shall have the meaning given to those terms herein.  It is the Parties' intent in connection with all documents related to this Agreement that defined terms as used in other documents shall have the meaning given to them in this Agreement, unless otherwise specified.

### SECTION III—SETTLEMENT CONSIDERATION; SETTLEMENT ADMINISTRATION; TAX TREATMENT

1. **Gross Settlement Amount.** The Assignee, on behalf of the Assignors and solely from the Assignment Estate, as defined in the Assignment, agrees to pay the Gross Settlement Amount of Eight Hundred and Eighty-Seven Thousand Dollars ($887,000) in consideration for this Agreement as set forth herein. Prior to the Effective Date, the Settlement Administrator shall provide the Assignee with an IRS Form W-9 for the QSF and wiring instructions to enable payment of the Gross Settlement Amount by the Assignee as set forth herein. The Assignee and Assignors represent and warrant that, to the best of their present, actual knowledge, the Gross Settlement Amount is the entire unencumbered amount available to the Assignee to resolve the Federal Litigation, taking into account all current and anticipated secured and administrative claims to be paid under the Assignment. The Gross Settlement Amount includes the total amount of consideration to be paid hereunder, including without limitation any payments to or on behalf of the Class Members and all Settlement Costs.

2. **Projected Net Pre-Tax Settlement Amount.** The Projected Net Pre-Tax Settlement Amount for each Class Member is listed on Schedule 1 to this Agreement. The amounts are calculated as follows (after all Settlement Costs are deducted from the Gross Settlement Amount): (a) Class Members shown in Dillon Logistics' records at Facilities other than Bartow, Mulberry, Savannah, and Tampa, and which had fewer than fifty (50) non-part-time employees, are allocated $250.00 each; and (b) Class Members shown in Dillon Logistics' records at the Bartow, Mulberry, Savannah, and Tampa Facilities are allocated a pro rata share of the remaining Projected Net Pre-Tax Settlement Amount based on Class Counsel's calculations, from available data, of their maximum theoretical WARN wage claim and which is, in no event, less than $250.00.

3. **No Reversionary Interests.** Under no circumstances will any portion of the Gross Settlement Amount revert to the Assignors or the Assignee, except to the extent any putative Class Member opts-out of this Agreement and the settlement embodied herein. In such event, the Projected Net Pre-Tax Settlement Amount attributed to any putative Class Member who opts out of the settlement embodied in this Agreement shall be returned by the Settlement Administrator to the Assignee, on behalf of the Assignors, within five (5) days of the Effective Date, and shall be maintained in accordance with the Assignment.

4. **Settlement Fund; Delaware Chancery Court Notice of Intended Distribution.** Within five (5) calendar days before the Effective Date, the Settlement Administrator shall open the QSF for the purpose of making the distributions described herein ("**Settlement Fund**"). On the Effective Date, the Assignee shall transfer the Gross Settlement Amount into the Settlement Fund. Within three (3) business days of Plaintiffs' filing of the Settlement Motion, the Assignee will file a status report with the Delaware Chancery Court about this Agreement and the Assignee's intent to make the distribution from the Assignment Estate as set forth herein. If Delaware Chancery Court indicates that its approval is required for the intended distribution, the Assignee shall promptly seek such approval and the Parties will confer in good faith to reset the relevant distribution deadlines set forth in this Agreement and as approved by the Court, if needed. To the extent approval by the Chancery Court is required and not provided, this Agreement shall be null and void *ab initio* and subject to the termination provisions provided herein.

**5. Settlement Administration.** Following receipt of the Gross Settlement Amount in the QSF, the Settlement Administrator shall be responsible for handling all aspects of the administration of the distribution of the Gross Settlement Amount, including, but not limited to, (a) the determination of the Employee Portions for each Class Member based on the Projected Net Pre-Tax Settlement Amount for each shown on <u>Schedule 1</u>, as well as the determination of the Employer Portions; (b) the preparation and mailing of settlement checks to each Class Member, based on the Projected Net Pre-Tax Settlement Amount for each shown on <u>Schedule 1</u>, minus the Employee Portions and the Employer Portions; (c) wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions that The Gardner Firm, PC will provide to the Settlement Administrator; (d) the withholding, transmittal, and reporting of all payroll taxes, and preparing and mailing of all W-2 Forms and/or 1099 Forms, where applicable; and (e) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses and depositing uncashed funds with any applicable state unclaimed funds agency in accordance with this Agreement.

**6. Tax Treatment.** Upon preliminary approval of this Agreement, the Assignee shall provide the Settlement Administrator with Social Security numbers for each Class Member for the Settlement Administrator's use in locating any Class Member whose address is stale and/or for the preparation of any necessary tax forms in connection with the distributions contemplated hereunder. The Projected Net Pre-Tax Settlement Amount per Class Member, as described herein, shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on IRS Form W-2 and any applicable state or local tax form. Class Counsel's Fees and Class Counsel's Expenses shall be reflected on IRS Form 1099 and any applicable state or local tax form. The Assignors and Assignee make no representations as to the tax treatment or legal effect of the payments called for under this Agreement, and the Plaintiffs and putative Class Members are not relying on any statement or representation by Assignors or Assignee in this regard. The Plaintiffs and putative Class Members understand and agree that (i) they will be solely responsible for the Employee Portion, (ii) the Settlement Administrator will be responsible for issuing all tax forms and any necessary tax withholding, (iii) the Employer Portion shall be deducted and paid from the Gross Settlement Amount; and (iv) if it is subsequently determined by any taxing authority that any employee owes any additional taxes with respect to any money distributed under this Agreement, liability for such taxes rests exclusively with that employee, and the Assignors and Assignee will not be responsible for the payment of such taxes, including any interest and penalties.

<u>SECTION IV– ATTORNEYS' FEES, COSTS, AND EXPENSES; SERVICE AWARDS</u>

**1. Arm's-Length and Separate Negotiations.** The Parties negotiated and reached full agreement on the material terms of this Agreement before discussing Class Counsel's Fees, Class Counsel's Expenses, and the Service Payments. At no time did the Parties condition the relief afforded herein to the putative Class Members on payment of any fees, costs, or expenses to Class Counsel or any service payments to the Plaintiffs. Class Counsel's Fees, Class Counsel's Expenses, and the Service Payments are subject to Court approval and such approval shall be requested in Plaintiffs' Settlement Motion as provided herein and which the Assignee, Assignors and Defense Counsel shall not oppose.

2. **Release by Class Counsel.** Upon payment of Class Counsel's Fees and Class Counsel Expenses, as approved by the Court, the Released Persons (as defined below) will forever and finally have satisfied any and all of their obligations to Class Counsel or any other person, if any, concerning payment of attorneys' fees, expenses, and costs in the Federal Litigation and with respect to this Agreement, and the Released Persons will forever and finally be absolved, released, and discharged of any liability whatsoever to Class Counsel or any other person, if any, concerning attorneys' fees, expenses, and costs in the Federal Litigation and with respect to this Agreement. Under no circumstances will Class Counsel or any other person bring any claims against the Released Persons for, because of, relating to, concerning, or as a result of any payment or allocation of attorneys' fees, expenses, and costs made in accordance with this Agreement, and Class Counsel releases the Released Persons from any and all claims because of, relating to, concerning, or as a result of any payment or allocation of fees, expenses, and costs made in accordance with this Agreement; provided, however, that nothing contained herein shall apply to any action to enforce this Agreement.

3. **Effect on this Agreement.** The Parties agree that the rulings of the Court regarding the amount of Class Counsel's Fees, Class Counsel's Expenses, and the Service Payments, and any claim or dispute relating thereto, will be considered by the Court separately from the remaining matters to be considered at the Fairness Hearing as provided for by this Agreement and that any determination in that regard may be, but is not required to be, embodied in a separate order from the Court. Any order or proceedings relating to the amount of Class Counsel's Fees, Class Counsel's Expenses, and the Service Payments, including any appeals from or modifications or reversals of any orders related thereto, shall not operate to modify, reverse, terminate, or cancel this Agreement, affect the releases provided for in this Agreement, or affect whether the Final Order and Judgment becomes final.

SECTION V– DISTRIBUTIONS FROM THE SETTLEMENT FUND

1. **Types of Distributions.** The Settlement Administrator shall be authorized to make the following distributions from the Settlement Fund, after the Gross Settlement Amount has been received from the Assignee: (a) payments to the Class Members for their share of the Net Settlement Amount, based on Projected Net Pre-Tax Settlement Amount for each shown on Schedule 1, minus the Employee Portion and the Employer Portion; (b) payment of the Settlement Costs; (c) payment to the Assignee of any Projected Net Pre-Tax Settlement Amount attributed to any putative Class Member who opts out of the settlement embodied in this Agreement; and (d) any other payment mutually agreed by the Parties and approved by the Court as needed. The Settlement Administrator shall, as contemplated and described herein, distribute the Class Member checks, Class Counsel's Fees, Class Counsel's Expenses and the Service Payments from the Gross Settlement Amount promptly following the Effective Date. Checks will be mailed by the Settlement Administrator to the last known mailing address contained on Schedule 1, as provided by the Assignee, or as updated by the Settlement Administrator or Class Counsel through its standard practices, or as updated by a Class Member. Checks shall be valid for 180 days (the "**Check Cashing Period**"). If the Settlement Administrator receives any checks returned as undeliverable by the United States Postal Service, the Settlement Administrator will use reasonable efforts to locate the current address of the Class Member and re-mail or reissue the check accordingly. The Settlement Administrator shall not be required to send a check by mail to any Class Member whose last known street address, as updated through the National

Change of Address registry, is determined to be undeliverable pursuant to one of the following mailing codes: F (foreign move, no new address available), G (postal box closed, no new address available), or K (move, left no forwarding address). In the event any Class Member becomes subject to a legal wage garnishment order, which order is issued, and served, on any Assignor and/or the Assignee after the date of execution of this Agreement and before any distribution from the Gross Settlement Amount, the Parties will confer in good faith and direct the Settlement Administrator to take any legally-required actions.

      **2.**    **Unclaimed Settlement Checks.** Should any Class Member fail to negotiate their settlement check during the Check Cashing Period or if such checks are returned as undeliverable, the Settlement Administrator shall, within sixty (60) days following the end of the Check Cashing Period, deposit uncashed funds with any applicable state unclaimed funds agency.

### SECTION VI–VERIFICATION OF THE PUTATIVE CLASS MEMBERS

The Assignee and Assignors acknowledge that they determined the identity of the Class Members through Dillon Logistics' business records, which information was provided to Class Counsel in connection with mediation and pursuant to Federal Rule of Evidence 408. Should the Parties determine that any part of Schedule 1 should be filed under seal with the Court, the Parties agree to submit a joint motion seeking such relief from the Court, if necessary.

### SECTION VII–APPROVAL PROCESS; THE ASSIGNEE'S AUTHORITY TO ENTER INTO THIS AGREEMENT ON BEHALF OF THE ASSIGNORS AND LIMITED INTERVENTION; AND CLASS NOTICE

      **1.**    **Conditional Certification for Settlement Purposes Only**. Among other things, the Assignors and Assignee dispute that a contested damages class could be certified in the Federal Litigation. However, solely for purposes of avoiding the expense and inconvenience of further litigation, the Assignors and Assignee do not oppose and hereby agree to certification of the Federal Litigation as set forth herein and for notice and settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3). This Agreement shall not be deemed a concession that any contested damages class could be certified, nor would the Assignors and Assignee be precluded from challenging class certification in further proceedings in the Federal Litigation or in any other action if the settlement embodied in this Agreement does not obtain final approval and/or if the Effective Date does not occur of any reason. In that instance, the Assignors and Assignee shall not be prejudiced in any way from opposing class certification in the Federal Litigation or in any other action; and Plaintiffs and the putative Class Members shall not rely on this Agreement, the Preliminary Approval Order, or any other order of the Court relating to this Agreement as evidence to support class certification. The Parties shall not be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including but not limited to, claims or objections to class certification, or claims or defenses on the merits. The Parties reserve their respective rights to prosecute or defend the Federal Litigation in the event that the settlement embodied in this Agreement does not obtain final approval and/or if the Effective Date does not occur for any reason.

      **2.**    **Settlement Approval Process**. Plaintiffs shall file a motion with the Court for approval of this Agreement and the settlement embodied herein, which requests a bifurcated preliminary and final fairness hearing process, and which the Assignee, Assignors and Defense

Counsel shall not oppose (the "**Settlement Motion**"). The Settlement Motion shall be filed no later than September 12, 2022, which final motion and moving papers shall be provided to Defense Counsel at least twenty-four hours before filing. At an initial hearing requested in the Settlement Motion (the "**Initial Hearing**"), the Plaintiff shall seek entry of the Preliminary Approval Order that conditionally certifies the Class and preliminarily approves the settlement embodied in this Agreement, including without limitation, (i) appointing the Plaintiffs as Class Representatives, (ii) appointing Class Counsel as class counsel, and (iii) approving the form and manner of the Class Notice to be sent to the Class Members. At the Initial Hearing, the Parties shall also request a date for a final fairness hearing (the "**Fairness Hearing**") to take place during 2022, subject to the Court's calendar, but in no event sooner than ninety (90) days following the date when notice is provided to appropriate federal and state officials in accordance with the Class Action Fairness Act, which notice shall be sent by the Settlement Administrator within two (2) business days of the date the Plaintiffs file the Settlement Motion. Within two (2) business days of the Settlement Administrator's mailing of the Class Action Fairness Act notices, Defense Counsel shall file a notice with the Court reflecting the date the Class Action Fairness Act notices were mailed. At the Fairness Hearing, the Parties will ask the Court to consider whether the settlement embodied in this Agreement is fair, reasonable and adequate and whether the notice program administered by the Settlement Administrator was sufficient as required by Federal Rule Civil Procedure 23. In doing so, Class Counsel will submit appropriate supporting materials concerning the notice program, objections and opt-outs. Based on this Agreement and those supporting materials, the Parties will ask the Court to enter the Final Order and Judgment, substantially in the form attached hereto as <u>Exhibit B</u>. This Agreement and the settlement embodied herein and as approved by the Court is subject to, and conditioned upon, entry of the Final Order and Judgment. The Parties will jointly take all reasonable steps necessary to secure the Court's approval of this Agreement.

3. **The Assignee's Authority to Enter Into This Agreement and Limited Intervention**. The Assignee in good faith asserts and believes that it has specific authority to take action for the Assignors, as set forth herein, pursuant to the Assignment and as approved by the Delaware Chancery Court, which Assignment has been provided to Class Counsel. This authority includes, without limitation, the authority to (i) execute this Agreement on behalf of the Assignors and (ii) effectuate the terms of this Agreement and settlement embodied herein, including, without limitation, the payment of the Gross Settlement Amount to the Settlement Fund, as approved by the Court, subject to giving notice of this Agreement to the Delaware Chancery Court as provided herein. In connection with exercising its authority under the Assignment, the Assignee shall file, with the assent of the Plaintiffs, a motion to intervene in the Federal Litigation for the sole purpose of effectuating the terms of this Agreement and settlement embodied herein. Should this Agreement not be approved or be deemed void, or should the Effective Date not occur for any reason, the Assignee shall be permitted to withdraw its intervention unilaterally and such withdrawal will not be opposed by Plaintiffs or Class Counsel, but such agreement not to oppose such withdrawal shall not act as a waiver of any rights Plaintiffs may have to seek to add or join the Assignee to the Federal Litigation by motion, which motion the Assignee may oppose. The Assignee shall file its motion for limited intervention contemporaneously with Plaintiff' filing of the Settlement Motion.

4. **Class Notice; Settlement Website.** The Settlement Administrator, with the assistance of Class Counsel, shall be responsible for the production and mailing of the Class Notice, the cost of which shall be paid from the Gross Settlement Amount. The address of The

Gardner Firm, PC will be used as the return address for the Class Notices so that any returned Class Notice will be returned to The Gardner Firm, PC. Class Counsel will respond to all inquiries of the Class Members arising from or related to this Agreement. The Settlement Administrator shall mail the Class Notice by first class mail to the Class Members at the addresses listed on Schedule 1 on the Notice Date, as approved by the Court. The Class Notice, which includes the opt-out notice form ("**Opt-Out Notice Form**"), shall be in substantially the form annexed to the Preliminary Approval Order attached hereto as Exhibit A or such substantially similar form as may be approved by the Court. In the event that a Class Notice is returned as undeliverable, the Settlement Administrator and/or Class Counsel will forward to such corrected addresses as provided herein. If Class Notice is returned again, the Settlement Administrator will send Class Notice to such Class Member by e-mail, to the extent the Assignee is able to locate the Class Member's e-mail address in the Assignors' business records. The Settlement Administrator or Class Counsel shall send the Class Notice by e-mail regardless of whether any Class Member has notified the Assignee or Assignors that they no longer wish to receive e-mails pursuant to the CAN-SPAM Act of 2003. The Parties agree that e-mailing this notice is not intended to be a "commercial" e-mail message under the provisions of CAN-SPAM, but, rather, is intended to be a "transaction or relationship" e-mail message to the extent CAN-SPAM applies. The Settlement Administrator shall also establish the Settlement Website by the Notice Date, which website shall remain active until sixty (60) calendar days after the Effective Date.

### SECTION VIII–OBJECTIONS AND OPT-OUTS; TERMINATION

1. **Objections.** Any putative Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the settlement embodied herein must file on or before the Objection and Opt-Out Deadline a written objection with the Court and deliver the objection in accordance with the procedure described in the Class Notice. Any Class Member who submits a timely objection as set forth above may appear at the Fairness Hearing with or without counsel at the putative Class Member's own expense. Any Class Member who fails to comply with the provisions herein will not be permitted to object to the approval of this Agreement and upon the Effective Date, shall be bound by the terms of this Agreement. Any objections will be provided to Defense Counsel promptly upon receipt by the Settlement Administrator or Class Counsel.

2. **Opt-Outs; Assignors/Assignee Right to Void this Agreement.** Any putative Class Member may opt-out of the settlement embodied in this Agreement and preliminarily approved by the Court by sending a completed Opt-Out form, substantially similar to the form attached to the Class Notice in accordance with the procedure described in the Class Notice. No opt-out request will be valid unless all of the information described in the Class Notice for opt-outs is included. No putative Class Member, or any person acting on behalf of or in concert or participation with them, may exclude any other putative Class Member from the settlement embodied in this Agreement. Any opt-out requests will be provided to Defense Counsel promptly following receipt. Class Counsel represents that all putative Class Members who filed one or more Delaware Proofs of Claim, and who have engaged Class Counsel as counsel, have no intent to opt-out of this Agreement or the settlement embodied herein. If the aggregate number of opt-outs is greater than seven percent (7%) of the total number of putative Class Members, then the Assignee and Assignors may elect, at their sole discretion, to terminate this Agreement. Such termination

shall be made by written notice to Class Counsel within three (3) business days of the Objection and Opt-Out Deadline, as approved by the Court.

      **3.**    **Litigation Status if this Agreement is Terminated or Not Approved.** This Agreement is being entered into for settlement purposes only. If the Court does not approve this Agreement or enter the Final Order and Judgment, or if the Effective Date does not occur for any reason (including any reversal of the Final Order and Judgment by an appellate court), then this Agreement will be deemed null and void *ab initio*. In that event: (a) the Preliminary Approval Order, Final Order and Judgment, and any other order post-dating preliminary approval of this Agreement will be vacated ("**Denial Date**"), including, but not limited to, the conditional certification of the Class, conditional appointment of the Plaintiffs as Class Representatives, and conditional appointment of the Plaintiffs' counsel as Class Counsel; (b) the Federal Litigation will revert to the status that existed before the Agreement's execution and the Assignee may withdraw its limited Intervention in the Federal Litigation and the Parties shall not have waived any of their claims or defenses; (c) no term or draft of this Agreement or any part of the Parties' settlement discussions, negotiations, or settlement documentation will have any effect or be admissible into evidence; provided, however, that nothing contained herein shall limit the Parties' rights to seek discovery in the Federal Litigation or any other proceeding nor shall anything contained herein limit the admissibility of any discovery responses; (d) all relevant Parties shall retain all of their rights to object to the maintenance of the Federal Litigation as a class action; and (e) all amounts, if any, provided by the Assignee to the Settlement Administrator to create the Settlement Fund will be returned to the Assignee within five (5) calendar days of the Denial Date.

### SECTION IX–RELEASES, ACKNOWLEDGMENTS, WAIVERS; AND EXPUNGEMENT OF WARN ACT CLAIMS FILED IN THE DELAWARE CHANCERY COURT

      **1.**    **Releases and Acknowledgments.** Upon the occurrence of both the Effective Date and payment of the Gross Settlement Amount by the Assignee in accordance with this Agreement, the Plaintiffs and the Class Members bound by this Agreement and the settlement embodied herein, and each of their respective heirs, legatees, next-of-kin, representatives, beneficiaries, successors, and assigns ("**Releasing Parties**") hereby:

    (a)    release, acquit, and forever discharge the Assignors and Assignee, and each of their respective present, future, and former administrators, advisors, agents (alleged, apparent, or actual), affiliates, assigns, attorneys, directors (whether acting in such capacity or individually), consultants, conservators, contractors, co-venturers, creditors, departments, directors, divisions, distributors, employees, independent contractors, insurers, joint ventures, managers, members, nominees, officers, parents, partners, personal representatives, predecessors, predecessors-in-interest, principals, privities, related entities, representatives, resellers, shareholders, subdivisions, subsidiaries, successors, successors-in-interest, retailers, wholesalers and each person or entity acting or purporting to act for them or on their behalf, including, without limiting the foregoing, CCC Advisors, LLC, Cotton Creek Capital Management III, LLC, Cotton Creek Capital Management II, LLC, Cotton Creek Capital Management LLC, and C7 Logistics, Inc. ("**Released Persons**"), from any and all manner of accounts, actions,

agreements, attorneys' fees, bills, bonds, causes of action, charges, claims, contracts, controversies, costs, covenants, damages, debts, demands, dues, executions, expenses, extents, interest, issues, judgments, losses, liabilities, obligations, penalties, promises, reckonings, remedies, rights, suits, sums of money, trespasses, and variances, of any nature whatsoever, known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, in law or equity, fixed or contingent, common law or statutory claims arising under or based upon the WARN Act as set forth in 29 U.S.C § 2104 and/or any comparable state or local mini-WARN Act statutes ("**Released Claims**" or "**Release**");

(b) acknowledge, represent, covenant, and warrant that the obligations imposed by the Release shall be forever binding, and that the Release may not be modified, amended, annulled, rescinded, or otherwise changed unless in writing signed and notarized by a duly authorized representative of the Assignors or Assignee to which the modification, amendment, annulment, rescission, or change applies, and which writing expressly refers to the Release and this Agreement;

(c) acknowledge, represent, covenant, and warrant that they have not made any assignment of any right, claim, or cause of action covered by the Release to any individual, corporation, or any other legal entity whatsoever; and

(d) acknowledge, represent, covenant, and warrant that they have full power, competence, and authority to execute and deliver the Release; and

(e) acknowledge, represent, covenant, and warrant, to the extent the Release may be deemed a general release—although the Parties agree that the Release contained herein is not intended to be a general release—that the Releasing Parties waive and release any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code which provides that "**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS A CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING A RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**" or any other similar federal or state law. Thus, subject to and in accordance with this Agreement, even if the Plaintiffs and/or Class Members may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, Plaintiffs and each Class Member, upon the Effective Date, shall be deemed to have and by operation of the Final Order and Judgment shall have fully, finally, and forever settled and released all of the Released Claims. This is true whether such Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, concealed or hidden, which now exist or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future,

including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

**2.     Effect on Delaware Chancery Court Claims.** Immediately upon the occurrence of both the Effective Date and payment of the Gross Settlement Amount by the Assignee in accordance with this Agreement, any claims filed in the Delaware Chancery Court that are included in the Released Claims shall be deemed null and void and the Assignee may use this Agreement and the Final Order and Judgment, as needed, to effect dismissal of such claims.

### SECTION X–BEST EFFORTS

The Parties and their counsel agree to cooperate fully with one another and to use their reasonable best efforts to effectuate this Agreement and administration of this Agreement and settlement embodied herein, including, without limitation, by carrying out the terms of this Agreement and by promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain final approval by the Court. For the avoidance of any doubt, nothing contained in herein shall require the Assignors or the Assignee to contribute any money in excess of the Gross Settlement Amount.

### SECTION XI–ADDITIONAL PROVISIONS

**1.     Compromise of Disputed Claims; the Denial of Wrongdoing.** The Assignors and Assignee dispute the claims alleged in the Federal Litigation and do not by this Agreement or otherwise admit any liability, fault, or wrongdoing of any kind. They have agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Federal Litigation. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever. Neither this Agreement nor any act performed or document executed pursuant to or in furtherance thereof: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim, or of any wrongdoing or liability of the Released Persons; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Persons or for any purpose whatsoever, in the Federal Litigation or in any proceeding in any court, administrative agency, or other tribunal; provided, however, that this Agreement and the proceedings and motions submitted in connection with this Agreement may be presented to the Court in connection with the implementation or enforcement of this Agreement, or the Delaware Chancery Court, as needed.

**2.     Confidentiality of Litigation Materials.** Under no circumstance shall the Plaintiffs or Class Counsel disclose to any third party any confidentially designated information obtained from the Assignors or the Assignee, except as may be otherwise permitted in this Agreement.

3. **Change of Time Periods.** All time periods and dates described in this Agreement are subject to the Court's approval. These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the putative Class Members.

4. **Real Parties-in-Interest.** In executing this Agreement, the Parties warrant and represent that they, including the Plaintiffs in their representative capacity on behalf of the putative Class Members, and, to the best of their knowledge, the putative Class Members are the only persons having any interest in the claims asserted in the Federal Litigation, including the Released Claims.

5. **Voluntary Agreement.** The Parties execute this Agreement voluntarily and without duress or undue influence. All of the Parties warrant and represent that they are agreeing to the terms of this Agreement based upon the legal advice of their respective counsel, that they have been afforded the opportunity to discuss the contents of this Agreement with their counsel, and that the terms and conditions of this document are fully understood and voluntarily accepted.

6. **Entire Agreement.** This Agreement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Federal Litigation. This Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement.

7. **Construction and Interpretation.** Neither Party nor any of the Parties' respective counsel will be deemed the drafter of this Agreement for purposes of interpreting any provision in this Agreement in any judicial or other proceeding that may arise between them. This Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

8. **Headings and Formatting of Definitions.** The various headings used in this Agreement are solely for the Parties' convenience and may not be used to interpret this Agreement. Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Agreement. The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or with respect to the scope of this Agreement.

9. **Recitals and Exhibits.** The Recitals and Exhibits to this Agreement are integral parts of the Agreement and are incorporated into this Agreement as though fully set forth herein.

10. **Modifications and Amendments.** No amendment, change, or modification to this Agreement will be valid unless in writing and signed by the Parties or their respective counsel, and with the approval of the Court, as needed.

11. **Further Assurances.** The Parties must execute and deliver any additional papers, documents, and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Agreement and the Parties' expressed intent herein.

12. **Agreement Constitutes a Complete Defense.** To the extent permitted by law, this Agreement may be pled as a full and complete defense to, and may be used as the basis for an

injunction against, any action, suit, or other proceedings that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement or the Final Order and Judgment entered in the Federal Litigation.

**13. No Waiver.** The waiver by a Party of any breach of this Agreement by the other Party shall not be deemed or construed as a waiver of any other breach, whether prior to, subsequent to, or contemporaneous with the execution of this Agreement or during administration of the settlement embodied herein, as approved by the Court.

**14. Class Counsel Warranties.** Class Counsel represent and warrant that they (a) have no current client with a claim against the Assignors, the Assignee, or any of the Released Persons of the type alleged in the Federal Litigation that has not already been filed, and (b) have no present intention to seek out or solicit former or current persons to pursue individual or class claims against the Assignors or Assignee with respect to matters within the scope of the Agreement. The Parties understand and agree that nothing herein imposes or shall be construed to prohibit or restrict Class Counsel from representing persons who seek representation for such claims subsequent to the Effective Date.

**15. Governing Law/Jurisdiction.** Except where superseded by applicable law, this Agreement shall be governed by the laws of the State of Delaware without regard for the choice of law provisions thereof.

**16. Notices.** Any notice or other communication required or permitted to be delivered under this Agreement shall be (i) in writing, (ii) delivered personally, by courier service or by certified or registered mail, first-class postage prepaid and return receipt requested, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate by a written notice filed with the Court):

**If to Plaintiffs or the Putative Class Members, to:**

THE GARDNER FIRM, P.C.
182 St. Francis Street; Suite 103
Mobile, AL  36602
P: (251) 433-8100
Attention:  Mary E. Olsen, Esq.

AND
LANKENAU & MILLER LLP
100 Church Street
8th Floor
New York, NY 10007
P: (212) 581-5005
Attention:  Stuart J. Miller, Esq.

   **If to the Assignee, to:**

   GELLERT SCALI BUSENKELL & BROWN, LLC
   1201 N. Orange Street, Suite 300
   Wilmington, DE 19801
   P: 302-425-5812
   Attention:  Michael Busenkell, Esq.

   **If to the Assignors, to:**

   GREENBERG TRAURIG, LLP
   One International Place, Suite 2000
   Boston, MA 02110
   P:  (617) 310-6040
   Attention: David G. Thomas, Esq.

   **18.**  **Signatures.** Facsimile or other electronic copies of signatures on this Agreement are acceptable, and a facsimile or other electronic copy of a signature on this Agreement shall be deemed to be an original.  Each party making an electronic copy of a signature on this Agreement shall retain the original copy bearing its signature until the Court issues the Final Order and Judgment.

   **19.**  **Counterparts.** This Agreement may be executed in one or more counterparts, each of which together or separately shall constitute an original and which, when taken together, shall be considered one and the same binding agreement.

   **20.**  **Binding Nature of Settlement.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, transferees, assigns, heirs and estates.

   **21.**  **Effect of Waiver of Breach.** The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

   **22.**  **Receipt of Advice of Counsel.** The Parties acknowledge, agree, and specifically warrant to each other that they have fully read this Agreement and received legal advice with respect to the advisability of entering into this Agreement and with respect to the legal effect of this Agreement.  The Parties further acknowledge, agree, and specifically warrant that they fully understand the legal effect of this Agreement.

   **23.**  **Opportunity to Investigate.** The Parties acknowledge, agree, and specifically warrant to each other that they and their counsel have had adequate opportunity to make whatever investigation and inquiries deemed necessary or desirable in connection with the subject matter of this Agreement and the advisability of entering into this Agreement.

**24. Good Faith Settlement.** The Parties acknowledge, agree, and specifically warrant to each other that they are entering into this Agreement freely, without duress, in good faith, and at arms' length.

**25. Preservation of Privilege.** Nothing contained in this Agreement or any order of the Court and no act required to be performed pursuant to this Agreement or any order of the Court is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege.

**26. Authority.** The undersigned counsel represent and warrant that they have actual authority to execute this Agreement on behalf of their clients and that they have provided their clients with independent legal advice with respect to the advisability and legal effects of entering into this Agreement.

**[signature page follows]**

**IN WITNESS WHEREOF**, the Parties have executed and delivered this Agreement as of the date first written above.

| | |
|---|---|
| **AGREED TO BY THE PLAINTIFFS**: | **AGREED TO BY THE ASSIGNEE**: |

/s/ *Mary Olsen*
THE GARDNER FIRM, P.C.
Mary E. Olsen
M. Vance McCrary
182 St. Francis Street; Suite 103
Mobile, AL 38102
P: (251) 433-8100
F: (251) 433-8181
molsen@thegardnerfirm.com;
vmccrary@thegardnerfirm.com

and

LANKENAU & MILLER, LLP
Stuart J. Miller
Johnathan Miller
100 Church Street, 8th Floor
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
sjm@lankmill.com; jon@lankmill.com

KWALL BARACK NADEAU PLLC
Ryan D. Barack
rbarack@employeerights.com
jackie@employeerights.com
304 S. Belcher Road, Suite C
Clearwater, Florida 33765
P: (727) 441-4947
F: (727) 447-3158

DAVID CHRISTIAN ATTORNEYS LLC
David C. Christian II (IL #6274704)
105 W. Madison St., Suite 1400
Chicago, IL 60602
P: (312) 282-5282
dchristian@dca.law

/s/ *Michael Busenkell*
GELLERT SCALI BUSENKELL
 & BROWN, LLC
Michael Busenkell (DE 3933)
Bradley P. Lehman (DE 5921)
1201 N. Orange St., Suite 300
Wilmington, DE 19801
T: (302) 425-5812
F: (302) 425-5814
mbusenkell@gsbblaw.com
blehman@gsbblaw.com

**AGREED TO BY THE ASSIGNORS**:

/s/ *Dennis Meloro*
GREENBERG TRAURIG, LLP
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
T: (302) 661-7000
F: (302) 661-7360
melorod@gtlaw.com

and

Terence P. McCourt (MA BBO 555784)*
David G. Thomas (MA BBO 640854)*
One International Place
Boston, MA 02110
T: (617) 310-6000
F: (617) 310-6001
mccourtt@gtlaw.com; thomasda@gtlaw.com

* Admitted *Pro Hac Vice*

19