IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN HOGG, STEVE RUGGIERO, DANNY WHEATON and THOMAS HOVIS on behalf of themselves and all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>DILLON LOGISTICS, INC.; BURR RIDGE PROPERTIES INC; BURR RIDGE PROPERTIES RE HOLDINGS, LLC; BURR RIDGE TRANSPORT INC.; DILLON ELMENDORF, LLC; DILLON FLEET SERVICES INC.; DILLON LEASING GROUP, INC.; DILLON LEASING, LLC, and DILLON MEMPHIS LLC,<br>                                    Defendants.<br>-------------------------------------------------------<br>CORY SIEGESMUND, on behalf of himself and a class of those others similarly situated,<br>                                    Plaintiff,<br><br>v.<br><br>DILLON LOGISTICS, INC.<br>                                    Defendant. | Case No.: 1:21-cv-01299-MN |

**DECLARATION OF MARY E. OLSEN**

I, Mary E. Olsen, declare as follows:

1.      I am a member of The Gardner Firm, PC, one of the law firms that represents Plaintiffs Brian Hogg, Thomas Hovis, Steve Ruggiero, Cory Siegesmund, and Danny Wheaton (the "Plaintiffs"), on behalf of themselves and certain putative Class Members, as defined herein (the "Class Members").

2. This declaration is submitted in support of the Settlement Motion, which seeks approval of the *Settlement and Release Agreement* (the "Agreement")[1] reached between Plaintiffs, (a) Dillon Fleet Services Inc., Dillon Logistics, Inc. ("Dillon Logistics"), Burr Ridge Transport Inc., Dillon Leasing Group, Inc., Dillon Leasing, LLC, Burr Ridge Properties Inc., Burr Ridge Properties RE Holdings, LLC; Dillon Elmendorf, LLC, and Dillon Memphis LLC (the "Assignors"); and (b) Dillon ABC, a Delaware Series LLC ("Assignee"), as a nominal party and for the purposes of settlement only, and pursuant to the authority granted to the Assignee by the Chancery Court of the State of Delaware in In re: Dillon Fleet Services, Inc., et al., Case No. 2021-0785-PAF (the "Delaware State ABC Proceeding") (the Plaintiffs, the Assignors, and the Assignee, each individually, a "Party" and collectively, the "Parties").

3. As described in the Settlement Motion, the Agreement resolves certain litigation and claims relating to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. ("WARN Act") in connection with Dillon Logistics' termination of its employees on or about August 31, 2021, and was reached after the Parties exchanged pertinent information underlying the litigation and actively engaged in settlement negotiations and in a day-long mediation session conducted by the Hon. Diane M. Welsh (retired) on August 5, 2022. In connection with the mediation, the Parties exchanged comprehensive mediation statements and other information after the mediation session concluded.

4. The Parties have agreed to conditional certification of a class for settlement purposes only, which, to the best of the Parties' information and belief, encompasses 432 Class Members, excluding officers or directors of any of the Assignors, and is comprised of employees who were

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the meanings provided in the Settlement Agreement, which is attached to the Settlement Motion as Exhibit 1.

directly employed by Dillon Logistics and who worked at or reported to the Facilities, were terminated without cause on their part on or about August 31, 2021, or thereafter, who do not file a timely request to opt-out of the Class.

5.      Pursuant to the terms of the Settlement, the Gross Settlement Amount is Eight Hundred Eighty-Seven Thousand Dollars ($887,000). The Settlement Costs (as defined in the Agreement) which include Class Counsel's Fees and Class Counsel's Expenses (as defined in the Agreement) and the Service Payments (as defined in the Agreement) are to be paid from the Gross Settlement Amount.  Following receipt of the Gross Settlement Amount in the QSF, the Settlement Administrator shall be responsible for handling all aspects of the administration of the distribution of the Gross Settlement Amount, including, but not limited to, (a) the determination of the Employee Portions for each Class Member based on the Projected Net Pre-Tax Settlement Amount for each shown on Schedule 1, attached to the Agreement, as well as the determination of the Employer Portions; (b) the preparation and mailing of settlement checks to each Class Member, based on the Projected Net Pre-Tax Settlement Amount for each shown on Schedule 1, minus the Employee Portions and the Employer Portions; (c) wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions that The Gardner Firm, PC will provide to the Settlement Administrator; (d) the withholding, transmittal, and reporting of all payroll taxes, and preparing and mailing of all W-2 Forms and/or 1099 Forms, where applicable; and (e) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses and depositing uncashed funds with any applicable state unclaimed funds agency in accordance with the Agreement.   For avoidance of doubt, the Employer Portions shall be satisfied from the Gross Settlement Amount.  The amount of each of the Class members' settlement distributions shall be

included by the Settlement Administrator under the Class Member's name and social security number on a W-2 Form and any applicable state or local tax form to be distributed by the Settlement Administrator. The Projected Net Pre-Tax Settlement Amount per Class Member is reflected on Schedule 1 to the Agreement and is allocated as follows: (a) Class Members shown in Dillon Logistics' records at Facilities other than Bartow, Mulberry, Savannah, and Tampa, and which had fewer than fifty (50) non-part-time employees, are allocated $250.00 each; and (b) Class Members shown in Dillon Logistics' records at the Bartow, Mulberry, Savannah, and Tampa Facilities are allocated a pro rata share of the remaining Projected Net Pre-Tax Settlement Amount based on Class Counsel's calculations, from available data, of their maximum theoretical WARN wage claim and which is, in no event, less than $250.00.

6. Pursuant to the Agreement, upon the occurrence of both the Effective Date and payment of the Gross Settlement Amount by the Assignee in accordance with the Agreement, the Plaintiffs and the Class Members will be bound by the Agreement, including the release of the "Released Claims" described therein.

7. The Settlement Agreement provides that Plaintiffs Brian Hogg, Steve Ruggiero, Danny Wheaton, Thomas Hovis and Cory Siegesmund shall be named as Class Representatives and The Gardner Firm, P.C., Lankenau & Miller, LLP, Kwall Barack Nadeau PLLC and David Christian Attorneys LLC are appointed Class Counsel.

8. As set forth in the Settlement Motion and the legal arguments contained therein, and as further supported by this declaration, I submit that the proposed Class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.

9. With respect to the numerosity requirement, I submit that Fed. R. Civ. P. 23(a)(1) is met because the proposed Class numbers over 400 former employees, making joinder impracticable.

10.     The commonality requirement requires existence of at least one question of law or fact common to the Class.  Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, *Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007), and does not require "an identity of claims or facts among class members." *Behrend*, 245 F.R.D. at 202.  I submit that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met here because there are questions of law or fact common to every member of the Class, namely, (i) whether Assignors violated the 60-day notice requirement under the WARN Act; (ii) whether Assignors were obligated to pay the Class Members sixty (60) days' wages and benefits and, if so, (iii) whether attorneys' fees are to be awarded to the Class Members, as the prevailing party.  I submit that any differences in the issues affecting Class Members' circumstances (for example, the precise day of layoff, rates of pay, and levels of benefits under the WARN Act on the date of their layoff), do not outweigh the questions of law and fact that are common to every Class Member.  For these reasons, I submit that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met

11.     Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (*quoting Baby Neal*, 43 F.3d at 55); *see* Fed. R. Civ. P. 23(a)(3).  "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-96 (*quoting Baby Neal*, 43 F.3d at 55).  I submit that the typicality factor of Fed. R. Civ. P. 23(a)(3)

is met here, as the claims of Plaintiffs, who are the representative parties, are typical of the claims of the Class.. Plaintiffs' claims are based on the same set of facts as the other Class Members. The Class Representatives do not allege that they were singled out for disparate treatment in their terminations. Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members – that they were allegedly terminated during the same time period without receiving sixty (60) days' advance written notice. Further, I submit that each Class Member's claim would be impractical and inefficient to litigate on an individual basis and that this class action is the superior method of adjudication. Accordingly, I submit the Court should find, for purposes of this settlement, that the typicality requirement is met.

12. In my experience, and having been appointed as class counsel in more than seventy-five (75) WARN class actions, commonality has been found for class certification where class members had different degrees of injury or even where defenses might exist only as to particular individuals.

13. In my experience, class action suits under the WARN Act almost always involve a class of plaintiffs who held different positions, were paid different amounts, frequently were terminated on different dates and often work at different locations with varying numbers of employees per location.

14. With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D. at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the

representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185. I submit that the requirements of Fed. R. Civ. P. 23(a)(4) are met here based on the following. I submit that Plaintiffs have no conflict of interest with other Class Members and have and will diligently prosecute the WARN claims and represent the interests of the Class. I submit that the Class Representatives are suitable to serve as the representatives for the Class. The Class Representatives were terminated during the relevant period and without sixty days advance written notice of termination. The Class Representatives had no involvement in any decision to terminate the employees, nor did they have any involvement in the decision regarding the provision of WARN notices to the employees. The Class Representatives have engaged counsel that have extensive experience in WARN class action litigation, having collectively been appointed class counsel in well over 100 WARN Act cases. The Class Representatives' counsel have diligently investigated the facts relating to the alleged "plant closings" in this matter. I submit that the Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members.

15. I submit that the proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(3). I submit that common questions of law and fact predominate over the individual issues. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3)

that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *Community Ban*k, 418 F.3d at 309

16. I submit that, just as typicality exists, predominance also exists. All of the claims arise from an alleged violation of the WARN Act resulting from the Assignors' shutdown on or about August 31, 2021. Accordingly, the Court should find that the predominance requirement is met.

17. I submit that the "superiority" element of Fed. R. Civ. P. 23(b) is met. I submit that the common questions of law and fact detailed that affect all members of the proposed Class predominate over any questions affecting only individual members. I submit that a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons: no proposed Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act; no other lawsuits other than those filed by Plaintiffs concerning the WARN Act rights of any proposed Class member is currently pending, to the Plaintiffs' knowledge; concentrating all potential litigation concerning the WARN Act rights of the proposed Class members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Class members and administration of this action as a class action will not be complicated or difficult because the names and addresses of the proposed Class Members have been established from Dillon Logistic's business records

18. I, along with the following attorneys, have had and will have responsibility for this matter: Vance McCrary (The Gardner Firm, PC), Stuart Miller (Lankenau & Miller, LLP), Ryan Barack (Kwall Barack Nadeau PLLC) and David Christian (David Christian Attorneys LLC).

19. I am a 1990 graduate of the University of Alabama and a 1994 graduate of the University of Alabama School of Law. I was admitted to practice law before the courts of the State of

8

Alabama in 1994 and the State of Florida in 1995.  I am a partner at The Gardner Firm, PC. During my twenty-seven years of law practice, I have been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment rights matters. Over the last eighteen years, I have been appointed and served as class counsel in more than seventy-five (75) WARN Act class actions nationwide.

20.     M. Vance McCrary is also a partner with The Gardner Firm, P.C.  He attended the University of Alabama School of Law, graduating in 2001.  He is admitted to practice law in the state and federal courts of Alabama, as well as the Eleventh Circuit U.S. Court of Appeals and the U.S. Supreme Court.  Mr. McCrary's practice focuses on the litigation of mass tort, class action, toxic tort and complex product liability claims.  Mr. McCrary regularly litigates labor and employment cases before state and federal courts.  Mr. McCrary has been lead class counsel in several state court class actions in Alabama. He has also served as co-lead class counsel in more than sixty (60) WARN Act cases on a nationwide basis.

21.     Stuart Miller is a 1982 graduate of Brooklyn College and a 1987 graduate of Columbia Law School. He was admitted to practice before the courts of the State of New York in 1988. He has been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment rights matters. Since August 1997, he has been appointed and has served as class counsel in more than one hundred (100) WARN Act cases.

22.     Ryan Barack of the firm Kwall Barack Nadeau PLLC has many years of experience in handling complex labor and employment law issues.

23.     David Christian of David Christian Attorneys LLC is experienced in a number of complex legal areas, including bankruptcy law.

24. I submit that the above-referenced counsel are well-suited to serve as Class Counsel, they have no conflict of interest, and, as shown herein, have diligently prosecuted the WARN Act claims and should be appointed Class Counsel.

25. I submit that the Class Notice attached to the Preliminary Approval Order will fairly apprise the Class members of the nature of the dispute, the terms and benefits of the Settlement, of their right to opt-out of the Class, and of the effect of their decision not to opt-out of the class, namely, that they will be bound by terms of the proposed Agreement, including the release of claims described therein. The Class Notice also provides each proposed Class Member with the amount of their share of the Gross Settlement Amount, pre-tax, and includes my direct telephone number so that Class Members can call me, should they have any questions about the Settlement.

26. The parties seek approval of service of the Class Notice by first class mail sent to the last known address of each Class Member, based upon available records and which defense counsel have provided to me (or to such other address as the Class Members may indicate to Class Counsel or which Class Counsel or the Settlement Administrator may locate). As discussed in the Settlement Motion, I submit that service in this manner, and according to the proposed schedule, is proper.

27. I submit that the Agreement has no obvious deficiencies and falls well within the range of reason.

28. The Agreement is the result of good faith, arm's length negotiations between capable adversaries.

29. I submit that the Service Payments reflected in the Agreement are fair and reasonable. The Class Representatives willingly stepped forward on behalf of their former co-workers in this litigation. I submit that, without the efforts of the Class Representatives, the former employees

included within the Class would almost certainly have received no payments for the alleged WARN violations, much less the substantial payments reflected on Schedule 1 to the Agreement. An incentive or service payment award to a Class Representative is "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded"). The Class Representatives performed important services for the benefit of the Class by commencing the litigation and willingly assisting counsel throughout the litigation since its inception. The amount of the Service Payments here (which, at $5,000 each, total approximately 2% of the Gross Settlement Amount) is also consistent and on scale with amounts awarded in WARN class actions in courts across the country. *See, e.g., D'Amico v. Tweeter OPCO, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (service payments were approximately 3% of common fund); *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court-approved service payments for two class representatives in the amount of $10,000 each; service payments were approximately 1% of common fund); *Kohlstadt v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011) (class representatives, received $7,500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, v. AWTR Liquidation Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013) (class representatives received $10,000 each as service payments, which were approximately 2% of the common fund); *Owens v. Carrier Corp.*, 2:08-CV-2331-SHM-tmp (W.D. Tenn. 2008)

(court-approved Settlement, which included service payments for two class representatives in the amount of $10,000 each; service payments were approximately 1% of common fund.)

30. The Parties fully explored the claims and defenses through informal disclosure and attended a virtual mediation in furtherance of their efforts to resolve this matter.

31. In view of the foregoing, and the Settlement Motion and all attachments thereto, I ask this Court to enter an order for the relief requested in the Settlement Motion, and to approve all aspects of the Settlement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on September 9, 2022, in Mobile, Alabama.

                                                  ____/s/ Mary E. Olsen_____
                                                        Mary E. Olsen